Mary Lee Maupin, Appellee, v. William H. Maupin, Appellant.

Term No. 4909.

Opinion filed January 19, 1950. Released for publication February 20, 1950.

NEWELL & BAETZ, of Alton, for appellant.

JACOBY, PATTON, MANNS & COPPINGER, of Alton, for appellee.

MR. JUSTICE SCHEINEMAN delivered the opinion of the court.

On January 17, 1947, the appellee (Mary Lee Maupin) secured a divorce from appellant (William H. Maupin) by default upon the ground of desertion. The decree awarded custody of two minor children, Marilyn and William, aged three and two, to the defendant, the father of said children "without any interference on the part of the said plaintiff." The decree contains no findings or recitals explanatory of this disposition.

On May 19, 1947, when the father had placed the girl in a hospital for a tonsillectomy, the mother went to the hospital, and when the child was discharged took the child, Marilyn, to her own home. Two days later appellant filed a contempt proceedings against appellee for violating the decree. Appellee answered and filed a counterpetition for modification of the decree, praying that she be given custody of both children. Within a month the cause was heard, at which time appellant voluntarily dismissed his contempt petition and contested modification of the decree.

The appellee testified in the latter contest that, at the time of the divorce hearing, she was ill and had been operated on for kidney trouble, that she had not established a home, and was in a nervous condition. She stated that all she could then think about was getting a divorce. She says that she has now regained her health and has a suitable home and a job. So far as any attack upon the appellant is concerned, the evidence was wholly insufficient to make any adverse finding against him, either as to his character or as to his home. In fact, appellant's evidence concerning his home and the care given the children was interrupted by the chancellor with the statement that the evidence on these subjects was sufficient. The chancel-

lor stated he was satisfied the children "had been getting very good care out there."

The chancellor purported to reserve final decision in the case pending an investigation of the homes by a probation officer. Nevertheless, an order was immediately entered granting "temporary custody" of Marilyn to appellee, contrary to the provisions of the decree then in effect, which had awarded both children to appellant.

A year later the court entered a decree reciting that the probation officer had reported both parties were fit parents and both had homes which were clean, neat, and suitable for children, and concluding with an order that Marilyn remain in the custody of the mother, and William in the custody of his father, the appellant.

This appeal was first taken to the Supreme Court upon the ground that appellant had been deprived of his constitutional rights when the circuit court used a report as basis for a decree, which report was not in evidence and no part of the record, and its author was neither sworn nor subjected to cross-examination. The Supreme Court ruled that the contention merely concerned evidence which affected the propriety of the judgment, but presented no constitutional question. Accordingly, the cause was transferred to this court. *Maupin v. Maupin*, 403 Ill. 316, 320.

Appellee has pointed out that, when the matter was referred to the probation officer, appellant stood silent and made no objection. As to this, the appellant replies: "The contention of appellant is not that the court had no right to have an investigation made by the probation officer—the lower court's error was in adjudicating the case on a report not of record or in evidence."

██ It would seem this contention may have merit, but it should be noted the final order of the court purports to recite the substance of the officer's report, and if such was the report, it certainly was innocuous as to appellant. As a result, taking the order at face value, it merely purports to find that both parents are fit and both homes are suitable; therefore, one child is awarded to each parent. Such a finding and order might have been proper on the original hearing, but in this case there had already been a final adjudication awarding custody to the father, and the only thing properly subject to decision by the chancellor on this proceeding was whether there had been such a change in conditions, in the few months elapsed, that the best interests of the children required a change in the order.

██ The Illinois Divorce Act authorizes the court from time to time to make alterations in the custody of children and in allowances for alimony and support as shall appear reasonable and proper. Ill. Rev. Stat. ch. 40, sec. 18, par. 19 [Jones Ill. Stats. Ann. 109.186]. However, it has long been recognized that the decree in the divorce case is final as to conditions then existing. This was the decision of the Supreme Court in *Cole v. Cole,* 142 Ill. 19, with respect to alimony, for the reason that, if this were not the rule, then the same or some succeeding chancellor, presiding in the same court, would have power to review, and to reverse, alter, or modify a decree, upon the facts existing at the time of its entry.

The same principle applies to a final and unconditional award of custody of children. *Thomas v. Thomas,* 233 Ill. App. 488. The latter case also cites 9 R.C.L. 476, and asserts the following rule:

"A decree fixing the custody of a child is final on the conditions then existing and should not be changed afterwards, unless on altered conditions since the de-

cree, or on material facts existing at the time of the decree, but unknown to the Court, and then only for the welfare of the child.''

We call particular attention to the last phrase in the above-stated rule. It should be plain, in any case, that the mere fact there has been a change in conditions is not sufficient in itself to modify a decree, unless those changed conditions affect *the welfare of the child*. As stated by another chancery court: ''But the changing circumstances must be, obviously, those that affect the children,—not those that concern the parents.'' *Dixon v. Dixon,* 76 N. J. Eq. 364, 367, 74 Atl. 995. Another court has said: ''In determining whether there have been changed conditions the court must keep in view primarily the welfare of the child. The custody of the child is not awarded for the purpose of gratifying the feelings of either parent or with any idea of punishing or rewarding either parent.'' *Hamilton v. Anderson,* 176 Ark. 76, 2 S. W. (2d) 673.

The provision in the original decree, ''until the further order of the court,'' adds nothing to its effect, since such power always exists pursuant to statute, when a proper case is presented.

The appellee seriously contends that it was not necessary for her to show that there was anything wrong with the care of the children in appellant's home, or that his home was unsuitable, or that he was a person of bad character and unfit to have the children. Appellee contends all that was necessary for her to show was, that her own conditions had changed, and that she could now provide a home for the children which she could not have done at the time of the original divorce hearing. In our opinion this is not the law, and we here call attention to prior decisions, some of which were not reported in full.

The case of *Thomas v. Thomas, supra,* was begun like this one, by petition for a rule to show cause. At

489

the conclusion of the hearing the chancellor changed the custody of the child from the appellant to the appellee. The Appellate Court said of this change: "The court did not find that she (appellant) was no longer a fit person to have the custody of the child, or that it would be for the best interests of the child to give it to appellee. In other words, there was no showing or finding that conditions had changed since the court originally decided it was best that the child should remain with its mother." Based upon that finding, the chancellor's order changing the custody was reversed.

A similar situation was before the Appellate Court of the Third District in *Linn v. Linn,* 329 Ill. App. 652, and another similar case was presented to the Second District in *Frentress v. Frentress,* 332 Ill. App. 283. In both cases the Appellate Court reversed the order of the chancellor changing custody, but the opinions were published in abstract form only, the courts evidently being of the opinion that there was no new proposition of law involved.

We have examined the full opinions in both of these cases. We find that there was a great deal more evidence in them concerning the factual situation than in the case before us, but in many respects both of the cited cases were parallel to this case.

In both of them the divorce decree was entered on a default hearing and resulted in a decree which deprived the plaintiff of custody of the children. In both of them there was a subsequent application to modify this provision, which resulted in a new order by the chancellor changing the custody to the original plaintiff in the divorce case.

In the *Linn* case the original plaintiff testified on the application to modify, that, at the time of the divorce, he had no home or facilities for taking care of the child, although this was not mentioned to the chancel-

490

lor hearing the divorce. He also testified that he now had a home, and gave a statement of adequate earnings and facilities to care for the child. Upon consideration of these, and other facts, the Appellate Court stated: "It was not shown it was for the best interests of the child that custody be transferred."

In the *Frentress* case, the plaintiff testified on application to modify that, prior to the divorce hearing, the parties had entered into a written agreement settling their property rights and also providing that the custody of the children should be awarded to the defendant and "that they should so remain until the court should otherwise order." It did not appear that this agreement was brought to the attention of the chancellor or considered by him in the divorce case when custody was awarded to the defendant. The Appellate Court did not devote much consideration to the agreement, but makes the following statements concerning the evidence, all of which would be equally applicable to the case at bar. The court said: "There is nothing in this record to indicate that appellant is an improper person to have custody of his children." Also, "The suitability of (his) home has not been challenged by anything appearing in this record." Also, "It is not suggested that there has been any change in the home or in the children's surroundings since the children became members of that home." The court further pointed out that the only change in circumstances brought out in evidence was that "appellee's condition has changed." Upon considering these and other facts before it, the court concluded, "It was not shown that it was for the best interests of these children that their custody be transferred."

In both of these cases, the *Thomas* case was quoted, to the effect that a change in conditions must be proved to justify the transference of custody, and even then "only for the welfare of the child." It is notable

491

that, in all three of the cited cases, there was evidence of a change in conditions respecting the party deprived of custody, upon a default hearing. In at least one there was evidence of a private agreement as to custody. All three cases resulted in reversal of the chancellor's modification, for lack of evidence that the children's welfare required a change.

██ The case now before us, and the cases above cited, must be distinguished from cases in which the divorce decree awards custody upon a specific finding pertaining to temporary conditions affecting the party deprived of custody. We have no doubt that a chancellor may incorporate in a divorce decree a provision that custody is temporarily placed with one party, because the other party does not at that time have a suitable home, but is a fit parent, and entitled to have custody when, and if, that party acquires a suitable home. There is nothing in the divorce decree before us to that effect. It is a flat award of custody to appellant without interference on the part of appellee.

 It is the policy of courts of review to recognize a broad discretion in a chancellor called upon to award custody of children, and perhaps even greater discretion is allowed in altering visitation privileges. But this policy cannot properly admit that a definite award of custody has no permanence or finality whatever. Changes in permanent custody (as distinguished from visitation privileges) should not be subject either to constant or spasmodic variation, merely to follow fluctuations in the health, employment, or residence of the party last deprived of custody, where the order was not conditional with respect to such changes.

██ Accordingly, we hold that, if a divorce decree award custody unconditionally, a mere showing of change in conditions of the person deprived of custody is not sufficient to set aside or drastically modify such decree, in the absence of proof that the welfare of the children requires such a change.

We find nothing in the record now before us indicating that the welfare of the children required any change in the custody decree. The chancellor did not make any finding to that effect, but on the contrary, announced from the bench that the children had been receiving very good care. The report of the probation officer, even if properly received and considered, does not appear to have presented anything to alter the chancellor's original opinion.

For the reasons given, there was no legal basis to alter the custody provisions of the original decree, and the order appealed from is reversed, and the cause remanded with directions to enter an order dismissing the counterclaim, subject, however, to the chancellor's continuing authority to provide for reasonable visitation privileges.

*Reversed and remanded.*

BARDENS, P. J., and CULBERTSON, J., concur.