**Louise Mackie, Plaintiff, v. Harvey C. Mackie, Defendant-Appellant, v. Marie June Carmon, Third-Party Defendant-Appellee.**

Gen. No. 50,676.

First District, Fourth Division.

June 9, 1967.

Rafferty, Scheele & Mackin, of Chicago (A. G. Scheele, of counsel), for appellant.

Crowley, Sprecher, Barrett & Karaba, of Chicago (Patrick F. Crowley, Robert A. Sprecher and William G. Webber, of counsel), for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

This appeal is taken from a judgment order of the Circuit Court of Cook County, giving permanent custody of a minor child, Carol Louise Mackie, to her grandmother, Marie June Carmon, and denying Harvey C. Mackie, father of the child, any rights of visitation.

Louise Mackie, a resident of Chicago, Illinois, filed a divorce action against her husband, Harvey C. Mackie, a resident of Washington, D. C., on September 4, 1962. Harvey C. Mackie, the defendant in the present case, was served by publication and did not then file an appearance. On December 6, 1962, the court, having jurisdiction of the parties and the subject matter, entered a default decree on the grounds of extreme and repeated cruelty and awarded the plaintiff, Louise Mackie, the custody of Carol Louise Mackie, the minor child of the parties. The court reserved jurisdiction with respect to alimony and child support.

On June 8, 1960, Louise Mackie and her daughter Carol (then eleven years of age) resided with Louise's mother, Marie June Carmon (third-party defendant), and with Louise's father, Lee Carmon, who died on December 30, 1963. Louise Mackie died on October 5, 1964. From June 8, 1960, until Louise's death, the defendant saw Carol only once, in an unexpected encounter in October 1961.

On December 21, 1964, the defendant commenced these custody proceedings by filing a petition in the Circuit Court of Cook County in the original divorce proceedings, to obtain custody of Carol. On January 15, 1965, the defendant filed a further petition alleging that Carol's maternal grandmother, Marie June Carmon, had been made a third-party defendant in the proceedings at his petition and that she had been served with summons, and praying that she be required to answer the petition, and that the petition be set down for hearing on January 28, 1965. In response to the defendant's petition, the trial court or-

dered that the two contestants for the custody of the minor child present themselves for depositions on January 26, and that a hearing be held on January 28, 1965. On January 28, the third-party defendant filed her answer to the defendant's petition and prayed that the custody of Carol be awarded to her.

On January 29, the trial court ordered that the custody matter be referred to Cook County Department of Public Health to investigate the respective parties and their homes and to report back to the court in sixty days and that the hearing be continued to April 8, 1965. On the same day, the court ordered that the defendant be permitted to see Carol on the entire days of January 29 and 30, on the weekend of February 20, and on two nonconsecutive weekends in March. The defendant exercised his visitation rights on January 29 and 30 and again on the weekend of February 20. He next saw the child on March 20, 1965, when he picked her up and took her out of the jurisdiction of the State of Illinois, to Washington, D. C., without the knowledge or permission of the third-party defendant.

On March 23, the third-party defendant filed a petition praying that 1) the child be returned to the petitioner at Chicago; and 2) a rule to show cause be entered against the defendant to show cause why he should not be held in contempt of court. On the same day the trial court ordered the defendant to return the child to the third-party defendant immediately. On March 26 the defendant had not complied with the order of March 23, whereupon the third-party defendant prayed that the defendant show cause why he should not be adjudged in contempt. The court ordered defendant to appear on April 8, 1965, to show cause why he should not be adjudged guilty of contempt of court for having violated the court's order of March 23. The defendant answered the third-party defendant's petition on April 2, 1965, and answered the petition for a rule to show cause on April 7.

On April 8, the defendant failed to appear as ordered by the court on March 26, and the court ordered that a writ of attachment issue, directed to the Sheriff of Cook County, commanding him to produce the body of the defendant before the court. The hearing which had been set by the court for April 8 was held on that date. The defendant did not appear, nor was the child returned at that time.

One witness, Dr. Nils J. Tunestan, a pediatrician, testified on behalf of the third-party defendant at the April 8 hearing. He stated that after the death of the child's mother the child was very upset and he prescribed tranquilizers for her. He added that it would be normal "to a certain extent" for her to be upset at that time. The court then continued the hearing so that the defendant might appear. The hearing was resumed on April 15, although the defendant again did not appear. On this date, seven witnesses appeared; three on behalf of the defendant, and four additional witnesses on behalf of the third-party defendant.

Othelia Henning, the defendant's mother, stated that she had gone to Washington when her husband died in December 1964, where she shared an apartment with her son; that Carol seemed very happy in this apartment, and that she took care of the child when the defendant was working during the day.

Jerry Sagat, a friend of the defendant, stated that he was with the defendant when he picked Carol up on February 20, 1965; that there was some confusion about getting her to go with them, and the defendant said they would leave and return in an hour to pick her up. The defendant and Carol spent the day at Sagat's home with his family. Sagat testified that when they left they were on their way back to Mrs. Carmon's home.

Judith Martin, an investigator for the Cook County Department of Public Aid, whose services had been requested by the trial court by its order of January 29, 1965, tes-

tified that she investigated the third-party defendant's home and "the home was a suitable place for a child of this age and the child would have a room of her own."

The third-party defendant, Marie June Carmon, testified on her own behalf that she had maintained a home for her daughter, Louise, until her death, and her granddaughter, Carol, from June 8, 1960, for almost five years when the defendant had taken the child away. During those five years the defendant had contributed $250 in two payments of $150 in 1961 or 1962 and $100 in September of 1964. The defendant had sent Carol six or seven dresses and these were the only gifts she received from her father. The defendant lived in a basement apartment from 1959 until early 1965. Mrs. Carmon had been present when the defendant had struck her daughter on two occasions and "on February 15, 1959, when I was sitting with the baby, he hit me with a wine jug . . . when Mr. Mackie was drinking wine."

Anna Caestecker and Julian Caestecker testified as to Carol's pleading not to be made to leave with the defendant on the second occasion when defendant appeared for visitation.

Virginia Harris, a social case worker, gave a deposition for evidentiary purposes in Washington, D. C., and her report was made a part of the record of the deposition. She testified that the child seemed well adjusted in the home with her father and her paternal grandmother, and that the home had possibilities of making Carol a very happy child.

At the conclusion of the hearing on April 22, 1965, the trial court ordered that the third-party defendant be granted permanent care, custody, control and education of the minor child; that the defendant return the child forthwith and shall have no right of visitation until further order of the court, and reserving jurisdiction to protect the child's best interest. The defendant has appealed from that order.

After the order was entered in the Circuit Court a petition was filed in the Chancery Court in Prince Georges County, Maryland. The court, giving full faith and credit to the order of the Circuit Court of Cook County, ordered the defendant to turn the custody of the child over to the third-party defendant, which he did. At the present time the child is in the custody of Marie June Carmon, the third-party defendant. The defendant cites and relies upon the Illinois Revised Statutes, chapter 3, section 132.*

██ The defendant argues that the court in rendering its judgment said that he had taken the child's welfare and best interests as the primary consideration, and that the third-party defendant had taken the position of mother to the child since 1960. Defendant contends that this, without more, is not sufficient "good reason" to award permanent custody to the third-party defendant. In Illinois it has been repeatedly held that the polestar for determining the custody of a child is the best interest and welfare of that child.

There is no contradiction that Marie June Carmon, the child's grandmother, had acted as a mother to the child. In People v. Weeks, 228 Ill App 262, the court awarded custody to the aunt of a minor child rather than to the father. After considering the several approaches Illinois courts have taken to the subject, the court said:

> ". . . notwithstanding the seemingly rigorous expression of the law as it is set forth in the statute,

---

\* Ill Rev Stats 1963, c 3, § 132. Parental Right to Custody.) When both parents of a minor are living and are competent to transact their own business and are fit persons, they are entitled to the custody of the person of the minor and the direction of his education; and, if one parent is dead and the surviving parent is competent to transact his own business and is a fit person, he is similarly entitled. The parents have equal powers, rights and duties concerning the minor. If the parents live apart, the court for good reason may award the custody and education of the minor to either parent or to some other person.

66

the court may, in determining the right of a parent to the custody of his child, give greater heed to the welfare of the child than to the natural right of the parent; in other words, although the parent is morally and pecuniarily fit, if it appears reasonably certain, considering all the circumstances, that it would be better for the welfare of the child that it should remain with a third person, the parent's natural rights must give way."

The defendant cites and quotes from Cormack v. Marshall, 211 Ill 519, 523, 71 NE 1077:

"We regard the rights of the parent as superior to those of any other person, when that parent is a fit person to have the custody of children and is so circumstanced that he can provide the necessaries of life and administer to the requirements of such a charge."

However, on page 527, the court said:

"The parent has the superior right to the child, but the superior right of the parent must yield to the best interest of the child. There is a recognition of both the rights, although the parent has the superior right, which is a true statement of an abstract proposition. He only has that superior right when it accords with the best interest of the child."

In Giacopelli v. Florence Crittenton Home, 16 Ill2d 556, 158 NE2d 613, the court discussed fully the principles which govern the question of child custody in Illinois and said: "The parents' natural rights must give way to the welfare and best interest of the child. Sullivan v. People ex rel. Heeney, 224 Ill 468." In that case it was also pointed out that

"Finally, the trial judge had the best opportunity to observe the parties and their conduct and demean-

or while testifying. This is a vital factor in evaluating the correctness of his determination. We should not disturb his findings unless they are palpably against the weight of the evidence. Upon our review, we cannot disagree with his findings. To remand this child to his natural parents would appear to constitute a tragic and unfortunate event in his young life."

Also see People ex rel. Hermann v. Jenkins, 34 Ill App2d 255, 180 NE2d 359. In Maupin v. Maupin, 339 Ill App 484, 90 NE2d 234, after a divorce, the father was given custody of two minor children; the mother then sought to have the decree modified so she might obtain custody of the children. In its refusal to reverse the court said:

"It should be plain, in any case, that the mere fact there has been a change in conditions is not sufficient in itself to modify a decree, unless those changed conditions affect *the welfare of the child.*"

In the present case, although at the time defendant's petition was filed, custody of Carol Mackie was in no one, still the court had the right to determine which party would best serve the welfare of the child.

After a consideration of the above cases, the question to be determined is what action of the court would be in the best interest of Carol Mackie. Although the court found the defendant to be in contempt, he was not found to be an unfit parent, although it would seem that the court considered him to be such when it denied visitation privileges in its order. This denial has no foundation when the facts of the case are examined.

At the conclusion of all the evidence the trial court said, among other things:

". . . I feel that at this particular time . . . because of the death of the mother and the trauma this child

will be going through at this particular time definitely will have an effect on the child, at this particular time and it's because of these things I think at this time it will be in the best interest of the child to bring her back into an environment that she is used to and has lived in for five or six years and also for the great loss that this child has suffered in this immediate area and I feel that because of these conditions I would be remiss if I took her away from her present environment.

"I see no fault with the father. I find no evidence that he is not conducting himself in a manner that would permit him to be a loving father but I feel, at this time, because of the death of the mother, not too long a time ago, I feel it would have a traumatic effect to take the child away from her accustomed surroundings and the kind of care that she is getting and it is for that reason that I hesitate to permit the child to live with the father at this time, although it may take place at a later date.

"I strongly recommend and suggest that this father not be prohibited from seeing the child and reasonable rights of visitation are urged and, if there is any interference on the part of the grandmother when the father tries to have the child with him periodically so there can be the necessary readjustment, that would be sufficient grounds to take the child away from her. This father has a right to this child and a right to visitation. The child is to get to know her father and if there is any evidence of trying to influence the child to act against the father then I certainly would entertain a motion at a future date to see that other steps were taken to place the child in circumstances where she can live a natural life as best we can give it to her and I think some arrangement should be made between counsel

to see that this father has the child with him through the summer and that through calls on the telephone and through correspondence with the father and to do everything possible in order to create a harmonious relationship between the father and this child. If the grandmother influences the child to act against the father or does not permit him to see his child and is not creating a harmonious feeling between the father and the child then we are doing a great disservice to the child and that should be the primary concern of everybody here.

. . . . . .

"We must also take into consideration that Mrs. Carmon is not a young person and I want to be assured that in case anything happens to her this father is not going to be a stranger to this child."

■ With these statements of the trial court we are in substantial accord. Upon a careful reading of the briefs and the record in the case, we hold that the judgment order giving permanent custody of Carol to Marie June Carmon and denying Harvey C. Mackie the right of visitation, should be reversed and remanded with instructions to the court to give temporary care, custody, control and education of Carol Louise Mackie to Marie June Carmon, the third-party defendant.

The order of the trial court should in addition set out that there should be reasonable visitation times allotted to the father of the child, and that the court should retain jurisdiction of the case.

Reversed and remanded with directions.

ENGLISH, P. J. and DRUCKER, J., concur.