(No. 49548.—

DONALD L. VALENCIA, Appellant, v. PALMETTA VALENCIA, Appellee.

*Opinion filed April 3, 1978.*

Charles R. Douglas, of Granite City (John P. Long, of counsel), for appellant.

Alan T. Stentz, of the Land of Lincoln Legal Assistant Foundation, Inc., of Madison, for appellee.

MR. CHIEF JUSTICE WARD delivered the opinion of the court:

The plaintiff, Donald Valencia, filed a petition in the circuit court of Madison County to amend an order granting child visitation privileges to his former wife, Palmetta Valencia, the defendant. He sought an amendment requiring that her visits with their minor daughter Trisha take place only in his presence. After a hearing, the court denied the petition, and later found the plaintiff in contempt of court for failure to comply with the visitation provisions of the parties' divorce decree. The appellate court affirmed the denial of plaintiff's petition. It declined to consider his appeal from the finding of contempt, observing that the contempt had not been wilful and that no punishment had been imposed. (46 Ill. App. 3d 741.)

We granted the plaintiff's petition for leave to appeal.

For a full understanding of the questions presented, it will be helpful to set out the relevant events in chronological order.

In June 1973, the plaintiff and the defendant separated. They had one daughter, Tammi, who was nine months old, and the defendant was expecting a second child. Within a month after the separation, the defendant and Tammi moved to Missouri and began living with James McReynolds. The defendant continues to live with McReynolds, although they have never married. After three months, a second daughter, Trisha, was born, and the defendant brought her home to live with Tammi and McReynolds.

On the evening of March 6, 1974, the defendant left Tammi, who was then 18 months old, in the care of McReynolds while she shopped for groceries. Several hours after the defendant returned with Trisha from her shopping trip, she found Tammi dead in her crib. An autopsy report stated that death was caused by "blunt force trauma of the abdomen." McReynolds gave a written statement to police investigators after being advised of his rights under *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. He admitted that while her mother was shopping, he had "spanked" Tammi, striking her "hard" three to five times, and that she had staggered, fallen and acted groggy after the punishment. The defendant gave a statement in which she said that Tammi had been ill for the preceding week with a cold and fever, that the child had "fallen and cut her lip" in her mother's absence, and was "groggy and sleepy" when put to bed at 10:45 p.m. At midnight, Tammi appeared to have possible breathing problems, and at 2:20 a.m. was "cold to the touch and unnaturally still." The record does not show whether any prosecutive action was taken against McReynolds or anyone else for the death of Tammi.

Several months later, the plaintiff filed for divorce in

Madison County, alleging extreme and repeated mental cruelty by the defendant. In October 1975 a default decree was entered, awarding the plaintiff sole custody of Trisha. No evidence of the circumstances of Tammi's death was presented to the court.

Trisha was living with the defendant and McReynolds in Missouri, when the plaintiff, in December 1975, instituted *habeas corpus* proceedings in Missouri to obtain custody of Trisha. There was a hearing at which evidence of the circumstances of Tammi's death was introduced. An agreed order was entered by the court under which the plaintiff was to receive custody of Trisha commencing on March 1, 1976. The order further provided that the defendant would have visitation rights of one week each month and six weeks each summer, and that there would be a reasonable division of holidays for visitation purposes.

Prior to March 1, the plaintiff and a woman friend visited Trisha several times at McReynolds' home. On a visit on February 7, the plaintiff observed Trisha had a large bruise or knot in the middle of her forehead and two black eyes. He took color photographs of the injuries. At the hearing later in Madison County the plaintiff and his friend testified that the defendant said that Trisha had suffered these injuries when she fell against a couch. The plaintiff sought to counter this explanation by his testimony that the couch was padded.

On February 23, 1976, one week before the plaintiff was to assume custody of Trisha and on the plaintiff's motion, the circuit court of Madison County, without a hearing, entered an agreed order amending the original divorce decree by incorporating into it the visitation provisions of the order entered in the Missouri *habeas corpus* proceeding. No evidence of the circumstances surrounding Tammi's death was brought to the attention of the court.

On February 29, 1976, the plaintiff took Trisha to his home in Illinois, where he noticed bruises on his daughter's

thighs. He later testified that he tried unsuccessfully to confer immediately with his physician and attorney and that he did have Trisha examined 10 days later at a hospital because of the bruises and an apparently unrelated bowel problem.

On April 28, 1976, he filed a petition in the circuit court of Madison County asking that the defendant's visits with Trisha be permitted only in his presence. The court granted the defendant's motion to strike all allegations of the petition relating to events prior to February 23, 1976, the date of entry of the agreed order incorporating the visitation provisions of the Missouri judgment into the Madison County divorce decree, and limited evidence to events following that date. Thus, the evidence heard by the court on the petition was in general confined to testimony relating to the bruises on Trisha's thighs and the condition of her face.

The court made a finding that the plaintiff had failed to show a substantial change in circumstances subsequent to February 23, 1976, and denied the petition. He was permitted to make an offer of proof, but in this the court limited the offer to evidence of events following the date of the original default divorce decree on the ground that all prior events were *res judicata*. The court nevertheless did allow the plaintiff to introduce, over objection, certain exhibits relating to Tammi's death, such as police and autopsy reports, the death certificate, and signed statements by McReynolds and the defendant.

The plaintiff subsequently failed to comply with the visitation provisions and was held in contempt of court. No punishment was imposed because, the court reasoned, the plaintiff had acted upon the advice of his attorney, and after the court's action he had complied with its order.

We first consider the plaintiff's contention that he should have been allowed to present evidence of relevant events that occurred prior to the February 23, 1976, entry of the agreed visitation order.

Contrary to the trial court's ruling that the doctrine of *res judicata* barred its introduction, the plaintiff should have been allowed to present evidence of relevant events prior to February 23, 1976, the date of entry of the agreed visitation order. The admission of evidence of material facts existing at the time of an earlier decree, but not then made known to the court, has been approved in cases of custody disputes if those facts tend to show that a change in custody would be in a child's best interests. *Schultz v. Schultz* (1976), 38 Ill. App. 3d 678, 680; *Randolph v. Dean* (1975), 27 Ill. App. 3d 913, 916; *McDonald v. McDonald* (1973), 13 Ill. App. 3d 87, 89; *Girolamo v. Girolamo* (1972), 5 Ill. App. 3d 627, 629-30; *Peraza v. Tovar* (1957), 13 Ill. App. 2d 405, 411; *Maupin v. Maupin* (1950), 339 Ill. App. 484, 488-89; *Harms v. Harms* (1944), 323 Ill. App. 154, 159; *Thomas v. Thomas* (1924), 233 Ill. App. 488, 493; see generally Annot., 9 A.L.R.2d 623 (1950).

Nelson on Divorce and Annulment supports this position:

> "If facts and circumstances affecting the welfare of minor children, which should be called to the attention of the court at the time of the entry of a divorce decree awarding the custody of the children, are overlooked, the court may subsequently modify the decree upon proof of those circumstances and a showing that the arrangement provided by the original decree is not conducive to the best interests of the children, since the proper custody of a minor child is a subject for consideration at any time."
> 2 Nelson, Divorce and Annulment sec. 15.37, at 310-11 (2d ed. 1961).

The rationale of admissibility was described in *Randolph v. Dean,* cited above. The court observed:

> "The rules generally relating to petitions for change of custody are well settled in Illinois. Basically, the best interests and welfare of the child are primary concerns of the court [cita-

tion]. It is also true that a divorce decree, including custody provisions, is normally res judicata as to facts existing at the time of its entry, but the decree in respect to custody is temporary in nature and may be changed from time to time as the best interests of the child require. [Citation.] It is also expressed, in many cases, that a change in custody is only warranted by a change of circumstances since the entry of the decree which relates to the welfare of the child. [Citations.]

It is first argued by appellant that the trial court failed to treat the original decree as res judicata and went behind the decree incorrectly to consider facts existing at that time but not in the record in the case. Appellant argues that the oral agreement and plaintiff's reason for signing the written stipulation, particularly, should not have been considered by the court. The doctrine of res judicata, however, should not be applied so strictly as to bar such evidence where the most important consideration is the welfare of the child. The court originally based the custody award on the agreement of the parties, without taking evidence as to the situation of the two parents or their ability to take care of a 2½-year-old boy. We agree that the petitioned court had the right to know the circumstances surrounding the custody agreement by the parties, when those circumstances did not appear of record, and had the right to consider them in rendering a decision on the petition." *Randolph v. Dean,* 27 Ill. App. 3d 913, 915-16.

There are differences in the situation here, but they are not of consequence. No valid distinction can be drawn, for example, between custody and visitation rights where

there is a claim that a child's health or life is endangered. The first concern must be the child's best interests and welfare. The evidence of Trisha's bruised face and thighs was received in isolation, so to speak, and the court found it was insufficient to support the plaintiff's claim that the defendant's visitation rights should be restricted. The excluded evidence would have been introduced to show that Trisha's sister died after having been physically abused by a man with whom Trisha's mother is still living, and with whom Trisha would be living during the extended periods of visitation granted under the court's order. Consideration of this evidence might have caused the court to make a different finding. In any event the plaintiff was entitled to have the evidence admitted and considered with the evidence of Trisha's bruised face and thighs.

The appellate court disposition of the plaintiff's appeal from the order which found him in contempt for not complying with the visitation provisions of the decree was improper. Generally, it is held that where no punishment has been imposed an order adjudicating one to be in contempt is not final and is not reviewable. (*Henry v. Waz* (1976), 35 Ill. App. 3d 752, 754; *County of Cook v. Triangle Sign Co.* (1963), 40 Ill. App. 2d 202, 210; Annot., 33 A.L.R.3d 448, 564-66 (1970).) The appellate court correctly observed that there was no issue before it because no punishment had been imposed, but instead of dismissing the appeal as to that portion of the judgment it affirmed generally the judgment of the circuit court. The appeal should have been dismissed as to the question of contempt. Further, it would be incongruous under the circumstances to permit this unreviewable order holding the plaintiff at fault to stand. We accordingly direct the circuit court to vacate its order declaring him to have been in contempt.

For the reasons given, the judgments of the circuit and appellate courts are reversed as to the portion on the

admissibility of evidence; the judgment of the appellate court is vacated insofar as it affirmed the order of contempt. The appeal is dismissed as to the question of contempt, and the cause is remanded to the circuit court of Madison County for further proceedings consistent with this opinion.

*Appellate court reversed in part and vacated in part; appeal dismissed in part; circuit court reversed in part; cause remanded, with directions.*