*In re* MARRIAGE OF YOSSEF ALUSH, Petitioner-Appellant, and NANCY ALUSH, Respondent-Appellee.

Second District   No. 2—87—0970

Opinion filed July 22, 1988.

Burton F. Grant, of Grant & Grant, of Highland Park, for appellant.

Sidney Z. Karasik, of Chicago, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:
Petitioner, Yossef Alush, appeals from the denial of his petition for a rule to show cause why respondent, Nancy Alush, should not be held in contempt for her alleged violation of certain terms of an Israeli di-

vorce decree relating to custody and visitation of their two minor children. The circuit court of Lake County extended recognition to the decree, which petitioner had filed with the court pursuant to section 16 of the Uniform Child Custody Jurisdiction Act (Act) (Ill. Rev. Stat. 1987, ch. 40, par. 2116). The primary issue on appeal is whether the circuit court properly determined that it did not have the authority to hold Nancy in contempt for conduct which violated the terms of the Israeli decree, but which occurred prior to the filing of that decree with the circuit court. Additionally, Yossef contends that the trial court erred by allowing a restraining order prohibiting either party from removing the children from the jurisdiction to continue in effect after the court extended recognition to the Israeli decree. Nancy has filed a motion to dismiss the appeal, asserting that the order denying the rule to show cause is not final and appealable, and we have ordered this motion to be taken with the case. For the reasons stated herein, we deny the motion to dismiss the appeal and affirm the order of the circuit court denying the rule to show cause.

Yossef and Nancy were married in Israel in 1975. They moved to Chicago about two years after their wedding along with their daughter, Sivan, who was born in Israel in 1977. About one year later, Yossef, Nancy, and Sivan moved to a condominium in Des Plaines. Yael, the couple's second daughter, was born in Highland Park in 1982. In 1983, the family returned to Israel.

Yossef and Nancy were granted a divorce by an Israeli court in May 1987. They had previously entered into an agreement concerning custody and visitation which provided that Nancy would receive custody of the children but was not to remove them from Israel without written consent from Yossef. Yossef was entitled to exercise visitation rights for 4½ hours each Tuesday, for three Sabbaths every month, and on half the school holidays and Israeli festivals. The Israeli court approved this agreement in 1986 and gave it the force of judgment.

In July 1987, Nancy removed the children from Israel, taking them to Highland Park, where her parents live. Nancy telephoned Yossef when she reached the United States and informed him that she could not live in Israel anymore. Nancy told Yossef that she and the children wanted to live in the United States and that the United States was the best place for them to live. Nancy had not received written permission from Yossef to remove the children from Israel.

On August 7, 1987, Yossef filed a petition to enroll the Israeli decree with the circuit court of Lake County and a petition for rule to show cause and other relief against Nancy. That same day, the circuit court entered an order directing Nancy to appear in court on August

14 with the children. On August 14, the court continued the pending matters for further hearing and issued an order enjoining the parties from removing the children from the jurisdiction. Another trial court order dated August 20 states that the restraining order of August 14 remains in effect. On August 28, the court granted Yossef's petition to enroll the Israeli judgment, continued the hearing on the petition for rule to show cause until September 14, and granted Nancy leave to file a petition to modify the Israeli decree, which she filed on September 14.

At the September 14 hearing, Nancy admitted that she had removed the children from Israel in July without written consent from Yossef. The trial court ruled that Nancy could not be held in contempt by an Illinois court for conduct that took place outside the State prior to the enrollment of the Israeli judgment. The trial court ruled further that Nancy could not be punished for failing to return the children to Israel after the enrollment of the Israeli decree because the order of August 14 requiring her to keep the children in Illinois was still in effect. Yossef now appeals from the denial of the petition for rule to show cause.

■■ We must first consider Nancy's motion to dismiss the appeal on the basis that the order in question is not final and appealable. The instant appeal was brought as an interlocutory appeal pursuant to Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)), the trial court having made the requisite finding that there was no just reason to delay enforcement or appeal. Nancy's argument that the appeal should be dismissed is premised upon the fact that her petition for modification of the Israeli decree was still pending at the time the appeal was taken. Rule 304(a) states that when the trial court makes the requisite finding in a case involving multiple parties or claims, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims. (107 Ill. 2d R. 304(a).) Our supreme court has held that a petition for dissolution of marriage advances but a single claim and that ancillary issues such as custody, property disposition and support are separate issues relating to that single claim. (*In re Marriage of Leopando* (1983), 96 Ill. 2d 114, 119.) The *Leopando* holding does not apply to post-dissolution proceedings, however. (*In re Custody of Purdy* (1986), 112 Ill. 2d 1, 5.) *Leopando* is therefore inapplicable to the case at bar. Even though the order denying the petition for rule to show cause did not resolve all pending claims, it is appealable if it was a final judgment order with regard to a separate claim.

In *Gentile v. Gentile* (1980), 87 Ill. App. 3d 311, the court held that an order denying a petition for rule to show cause why respondent

should not be held in contempt for failing to pay child support was not final and appealable because petitioner could still seek an arrearage judgment and the order did not completely dispose of the rights of the parties. (*Gentile*, 87 Ill. App. 3d at 313.) The *Gentile* holding would indicate that the order denying Yossef's petition for rule to show cause is not final and appealable, since it did not preclude Yossef from taking other steps to enforce the Israeli judgment, such as seeking dissolution of the August 14 restraining order and requesting an order directing Nancy to return the children to Israel in accordance with the Israeli decree.

■■ We decline to follow *Gentile*, however. An order is final and appealable if it terminates the litigation between the parties or disposes of their rights on some definite, separate part of the litigation. (*Hernandez v. Fahner* (1985), 135 Ill. App. 3d 372, 376-77; *Pottorf v. Clark* (1985), 134 Ill. App. 3d 349, 351.) In his petition for rule to show cause, Yossef sought to have Nancy held in contempt. A contempt proceeding is an original special proceeding which is collateral to and independent of the case in which the contempt arises. (*People ex rel. Scott v. Silverstein* (1981), 87 Ill. 2d 167, 172.) The court's order of September 14 completely disposed of the rights of the parties with regard to the petition for rule to show cause, which was a separate, independent proceeding. Accordingly, the denial of the petition for rule to show cause is a final and appealable order and Nancy's motion to dismiss the appeal is denied.

■■■ Although Nancy has not filed a brief with this court, we will consider this appeal pursuant to the guidelines set forth in *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 133. The trial court extended recognition to the Israeli decree pursuant to sections 16(a) and 24 of the Act (Ill. Rev. Stat. 1987, ch. 40, pars. 2116(a), 2124). Section 16(a) of the Act states as follows:

"A certified copy of a custody judgment of another state may be filed in the office of the clerk of any circuit court of this State. The clerk shall treat the judgment in the same manner as a custody judgment of a circuit court of this State. A custody judgment so filed has the same effect and shall be enforced in like manner as a custody judgment rendered by a court of this State." (Ill. Rev. Stat. 1987, ch. 40, par. 2116(a).)

Section 24 of the Act states as follows:

"The general policies of this Act extend to the international area. The provisions of this Act relating to the recognition and enforcement of custody judgments of other states apply to custody judgments and judgments involving legal institutions simi-

lar in nature to custody institutions rendered by appropriate authorities of other nations if reasonable notice and opportunity to be heard were given to all affected persons." (Ill. Rev. Stat. 1987, ch. 40, par. 2124.)

The term "custody judgment" includes court orders providing for visitation rights (see Ill. Rev. Stat. 1987, ch. 40, pars. 2103.02, 2103.06). We agree with Yossef's contention that sections 16 and 24 of the Act authorized the court to recognize and enforce the custody provisions of the Israeli decree. We do not agree, however, that the court had the power to hold Nancy in contempt for conduct which occurred prior to the recognition of the decree by the circuit court on August 28, 1987.

■■ Prior to the above date, Nancy did not violate any order from an Illinois court. In effect, Yossef is arguing that the circuit court of Lake County had the power to punish Nancy for contempt of an Israeli court. Contumacious conduct may only be punished, however, by the court which is actually offended by the conduct. (*Illinois Commerce Comm'n v. Salamie* (1977), 54 Ill. App. 3d 465, 479.) When the order of a State court is disobeyed, Federal courts and courts of other States have no power to punish the contemnor. (*Salamie*, 54 Ill. App. 3d at 479.) If Illinois courts do not have the authority to punish those who disobey court orders from other States for contempt, they certainly do not have the authority to hold individuals who disobey court orders from other nations in contempt. The Israeli decree did not gain the force and effect of an Illinois custody judgment until it was recognized by the court on August 28, 1987. Even if Nancy violated the Israeli decree prior to that date, she was not in contempt of any Illinois court because the Israeli decree had no force and effect in Illinois at the time.

Yossef asserts that sections 16 and 24 of the Act are rendered meaningless if Illinois courts do not have the power to punish parties for contempt for violating custody judgments of other jurisdictions prior to the recognition of those judgments by Illinois courts. We do not agree that this is the case. Once a foreign custody judgment is recognized by an Illinois court, continuing violations of that judgment may result in a finding of contempt. As the circuit court recognized, however, even if Nancy did violate the Israeli decree after it was recognized by the court on August 28, 1987, by keeping the children in Illinois, she could not have been held in contempt because the August 14 restraining order requiring her to keep the children within the jurisdiction was still in effect.

■■ ■ According to Yossef, when Nancy filed an answer to his petition for rule to show cause rather than a motion to strike or dismiss

pursuant to sections 2—615 or 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, pars. 2—615, 2—619), she waived any objection to the legal sufficiency of the petition and waived the argument that she could not be held in contempt for conduct prior to the recognition of the Israeli decree. Defects relating to subject matter jurisdiction can never be waived, however. (*Volkmar v. State Farm Mutual Automobile Insurance Co.* (1982), 104 Ill. App. 3d 149, 151.) Subject matter jurisdiction includes not only the power to hear and determine a class of cases but the power to grant the relief requested. (*People ex rel. Illinois Department of Human Rights v. Arlington Park Race Track Corp.* (1984), 122 Ill. App. 3d 517, 521.) The question of whether the circuit court had the power to hold Nancy in contempt for her conduct prior to the recognition of the Israeli decree was therefore a question of subject matter jurisdiction which could not have been waived by Nancy.

Yossef argues in his brief that the trial court erred by allowing the order restraining either party from removing the children from the jurisdiction to remain in effect after the court recognized the Israeli decree on August 28, 1987. Yossef's notice of appeal, however, mentions only the September 14, 1987, order denying his petition for a rule to show cause and requests that this order be reversed. The notice of appeal makes no mention of the restraining order. Accordingly, this court has no jurisdiction to review the restraining order. *Atkinson v. Atkinson* (1981), 87 Ill. 2d 174, 177-78.

Yossef also argues that the trial court should have considered other remedies to enforce the Israeli decree, such as ordering Nancy to turn the passports of the children over to him, presumably so he could return the children to Israel. Yossef made this request at the September 14 hearing and the trial court rejected it because it had not been made in a written motion. The only remedy rejected on the merits by the trial court on September 14, 1987, was a finding of contempt against Nancy for her conduct prior to that date. The trial court made no other rulings on or prior to that date concerning other potential remedies for enforcement of the Israeli decree. Accordingly, we affirm the order of the circuit court of Lake County denying Yossef's petition for a rule to show cause, and we do not consider what remedies, if any, should be utilized by the circuit court to enforce the Israeli decree.

Affirmed.

LINDBERG, P.J., and WOODWARD, J., concur.