No. 2--06--1005     Filed: 1-23-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| In re MARRIAGE OF JEAN MARIE SCHWIEGER, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Petitioner-Appellee, | ) ) | |
| and | ) ) | No. 89--D--1971 |
| EUGENE K. SCHWIEGER, | ) ) ) | Honorable Joseph R. Waldeck, |
| Respondent-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the opinion of the court:

Eugene K. Schwieger, the respondent in the original dissolution action, appeals from a postdissolution judgment requiring him to pay $76,903 to his ex-wife, Jean Marie Schwieger, the petitioner in the action, in satisfaction of the terms of the judgment of dissolution. For the following reasons, we dismiss the appeal for lack of appellate jurisdiction.

The trial court dissolved the parties' marriage on May 3, 1990. A section of the dissolution judgment provided that, pursuant to the parties' oral agreement, "if [Eugene] should sell the real property commonly known as 42460 North Pedersen Lane, Antioch, Illinois, to any party except [Eugene's] father, the proceeds of said sale shall be used to pay the costs of said sale, then any liens existing on said property, and then any remaining balance shall be divided equally between the parties."

On August 24, 2005, Jean filed a petition for indirect civil contempt against Eugene in which she alleged that he had sold the property, but had not paid a share of the proceeds to her.

On July 10, 2006, following a hearing, the trial court ruled that Eugene had sold the property on July 14, 2005, for $260,000 and that the only lien was a mortgage of $102,116.73. It ordered that Eugene pay Jean $46,403.19 before July 24, 2006. The trial court did not decide whether Eugene's failure to pay had been contemptuous.

Eugene filed a motion to reconsider on July 24, 2006. He attached as an exhibit a settlement statement for the property sale. This shows a sale price of $260,000 and that the buyer made a deposit of $61,000. It also lists Eugene as the sole seller.

On July 27, 2006, Jean filed a petition for attorney fees and a "Motion to Correct Scrivener's Error." The gist of the argument was that $46,403.19 did not equal half the proceeds of the sale after the lien was satisfied and that the discrepancy was the result of her failure to take into account the buyer's deposit of $61,000.

On August 1, 2006, the trial court struck Eugene's motion to reconsider. However, the trial court granted him leave to file an amended motion, which he did on August 14, 2006.

On September 12, 2006, Jean filed a "Second Petition for Indirect Civil Contempt," in which she asserted that Eugene had failed to pay half of the proceeds to her by July 24, 2006, as ordered by the trial court.

On September 22, 2006, the trial court denied Eugene's motion to reconsider and granted the "Motion to Correct Scrivener's Error." It ordered Eugene to pay Jean $76,903 by October 3, 2006. The trial court also continued the proceedings until October 3, 2006, for a hearing on Jean's second contempt petition. Eugene filed his notice of appeal on September 29, 2006.

Prior to reaching the merits, we must first consider our jurisdiction to hear the appeal. See State Farm Mutual Automobile Insurance Co. v. Hayek, 349 Ill. App. 3d 890, 892 (2004). In his jurisdictional statement, Eugene asserts that this is an appeal under Supreme Court Rule 304(b)(5) (210 Ill. 2d R. 304(b)(5)), which makes immediately appealable, despite the pendency of other matters, an "order finding a person *** in contempt of court which imposes a monetary or other penalty." Eugene alternatively asserts that the September 22, 2006, order was a final judgment appealable under Supreme Court Rule 301 (155 Ill. 2d R. 301). As we will discuss, the September 22, 2006, order was not appealable under either rule.

Initially, this appeal cannot be one under Rule 304(b)(5). That rule explicitly states that it applies to an order that imposes a penalty for contempt. The trial court plainly did not impose any penalty here. Yes, it entered a judgment against Eugene, but that judgment was merely the amount it calculated that Eugene owed under the dissolution judgment. A "penalty" is a " ' "[p]unishment imposed on a wrongdoer, esp. in the form of imprisonment or fine." ' " People v. Vasquez, 368 Ill. App. 3d 241, 261 (2006), quoting People v. Jamison, 365 Ill. App. 3d 778, 781 (2006), quoting Black's Law Dictionary 1153 (7th ed.1999). To calculate and order payment of what is already due cannot reasonably be understood as a punishment. Thus, the order that Eugene pay $76,903 did not impose a penalty and so was not appealable under Rule 304(b)(5).

Additionally, the order was also not a final judgment appealable as of right under Rule 301. For purposes of Rule 301, " '[a] final judgment is one that fixes absolutely and finally the rights of the parties in the lawsuit; it is final if it determines the litigation on the merits so that, if affirmed, the only thing remaining is to proceed with the execution of the judgment.' " In re M.M., 337 Ill. App. 3d 764, 771 (2003), quoting In re Adoption of Ginnell, 316 Ill. App. 3d 789, 793 (2000). An

order is not final where jurisdiction is retained for matters of substantial controversy. M.M., 337 Ill. App. 3d at 771. Here, the September 22, 2006, order did not finally resolve the litigation between the parties on the issue of whether Eugene had wilfully and contumaciously refused to comply with the trial court's orders to pay Jean 50% of the proceeds from the sale of the property. Although the trial court entered a $76,903 money judgment, it expressly retained jurisdiction over and continued the proceedings on Jean's second contempt petition. Thus, at the time Eugene filed his notice of appeal, this second contempt petition remained pending and had not been resolved. The pendency of this second contempt petition rendered the September 22, 2006, order nonfinal and rendered the notice of appeal from that order premature. See In re Marriage of Knoerr, No. 2--06--1060, slip op. at 11 (December 21, 2007) (holding that a party could not appeal the judgment on postdissolution petitions to contribute to college expenses and to increase child support while a civil contempt petition was pending in the trial court); In re Marriage of Alyassir, 335 Ill. App. 3d 998, 999-1001 (2003) (holding that a party could not appeal the judgment on a postdissolution petition to increase child support while a civil contempt petition was pending in the trial court).

Accordingly, we lack jurisdiction to address the merits of Eugene's appeal. Pursuant to Supreme Court Rule 303(a)(2) (Official Reports Advance Sheet No. 8 (April 11, 2007), R. 303(a)(2), eff. May 1, 2007), which applies retroactively here (Knoerr, slip op. at 11), we dismiss Eugene's appeal because on the present record, the notice of appeal is premature. We presume that Eugene can timely file a notice of appeal upon the trial court's resolution of the second contempt petition and any other pending claims in this matter. However, if pending claims have been resolved and the time to file a new notice of appeal has expired, Rule 303(a)(2) allows Eugene to establish the effectiveness of the present notice of appeal. See Knoerr, slip op. at 11. In the latter event, Eugene

may file a petition for rehearing and to supplement the record, thereby establishing our jurisdiction to address the merits.

For the reasons stated, we dismiss the appeal.

Appeal dismissed.

McLAREN, J., concurs.

JUSTICE GROMETER, specially concurring:

On October 16, 2007, I delivered the opinion in In re Marriage of Gutman, 376 Ill. App. 3d 758 (2007), which held that a civil contempt petition does not raise a "claim for relief" per Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)). That opinion was the law of the Second District for all of 9½ weeks, after which the panel in Knoerr, on which the majority here relies, decided to overrule it. I write separately to express that Knoerr did nothing to convince me that Gutman was wrong, much less so clearly wrong as to remove it from the ambit of stare decisis. Nevertheless, in the interest of providing clear guidance for our constituents, I will abide by the decision in Knoerr, and thus I specially concur in the present case.

Rule 304(a) states that, "[i]f *** multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the *** claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both." 210 Ill. 2d R. 304(a). In Gutman, relying on Kazubowski v. Kazubowski, 45 Ill. 2d 405 (1970), we ruled that a civil contempt petition initiates not a "claim for relief" within the meaning of that rule but, rather, an original, special proceeding. Thus, we held that a party may immediately appeal--without a Rule 304(a) finding--the final judgment on a civil contempt petition despite the pendency of an actual claim for relief, or the final judgment on an

actual claim for relief despite the pendency of a civil contempt petition. Knoerr, however, asserted that a civil contempt petition does initiate a claim for relief; thus, without a Rule 304(a) finding, a party may immediately appeal neither the final judgment on one claim for relief when a civil contempt petition is pending nor the final judgment on a civil contempt petition when another claim for relief is pending. The only exception, according to Knoerr, is that, per Rule 304(b)(5) (210 Ill. 2d R. 304(b)(5)), a party needs no Rule 304(a) finding to immediately appeal an order " 'finding a person or entity in contempt of court which imposes a monetary or other penalty.' " Knoerr, slip op. at 8, quoting 210 Ill. 2d R. 304(b)(5).

Knoerr asserted that in Gutman we erred in two respects. First, according to Knoerr, we "misapplied the holding of Kazubowski, forgoing years of legal precedent that holds that only contempt orders imposing fines or imprisonment may be appealed without a Rule 304(a) finding." Knoerr, slip op. at 4. "Second, [we] essentially rendered Rule 304(b)(5) (210 Ill. 2d R. 304(b)(5)) meaningless by expanding that exclusion beyond its explicit language." Knoerr, slip op. at 4. Neither attack is valid.

Knoerr pointed out that, in Kazubowski, the supreme court stated that " 'an adjudication in a contempt proceeding is final and appealable because it is an original special proceeding, collateral to, and independent of, the case in which the contempt arises where the imposition of the sanction does not directly affect the outcome of the principal action.' " (Emphasis added in Knoerr.) Knoerr, slip op. at 4-5, quoting Kazubowski, 45 Ill. 2d at 414-15. Knoerr then reasoned that in Gutman, we "essentially eliminated the emphasized language" (Knoerr, slip op. at 5), which, according to Knoerr, means that a contempt proceeding is original and special--and thus beyond the scope of Rule 304(a)--only where a sanction is imposed.

I confess that in <u>Gutman</u> we did not find the emphasized language particularly significant. Indeed, we were confident that the nature of a proceeding is determined by its <u>nature</u>, not its outcome. Had we known that <u>Knoerr</u> would attack us on this basis, perhaps we would have cited <u>People v. Shukovsky</u>, 128 Ill. 2d 210 (1988), in which the supreme court simply stated: "Contempt proceedings are 'original special proceeding[s], collateral to and independent of the case in which the contempt arises.' " <u>Shukovsky</u>, 128 Ill. 2d at 219-20, quoting <u>People ex rel. Scott v. Silverstein</u>, 87 Ill. 2d 167, 172 (1981), and citing <u>Hill v. Thomas B. Jeffery Co.</u>, 292 Ill. 490, 493 (1920). As <u>Knoerr</u> criticized us for "essentially" eliminating the emphasized language, I wonder whether it would criticize the supreme court for <u>actually</u> eliminating it. In any event, I remain convinced that a civil contempt petition, whether it is ultimately granted or denied, initiates an original and special proceeding that is not subject to Rule 304(a).

<u>Knoerr</u> went on to discuss a series of cases that purportedly support it. The first is <u>In re Marriage of Alush</u>, 172 Ill. App. 3d 646 (1988), which we relied on in <u>Gutman</u>. There, although the trial court entered a Rule 304(a) finding on its denial of a civil contempt petition, we took jurisdiction not on that basis but on the ground that the denial "completely disposed of the rights of the parties with regard to *** a separate, independent proceeding." <u>Alush</u>, 172 Ill. App. 3d at 650. <u>Knoerr</u> asserted that "<u>Alush</u> did not specifically indicate that [the] Rule 304(a) finding was unnecessary or insignificant." <u>Knoerr</u>, slip op. at 6. Fair enough. But it did specifically hold that the denial was appealable because it was final as to a separate, independent proceeding, and this is the same basis on which a grant is appealable, without a Rule 304(a) finding. See <u>Silverstein</u>, 87 Ill. 2d at 172 (sanction is appealable because "[i]t is the end of the proceeding"). If a grant is appealable

without a Rule 304(a) finding because it ends an original and special proceeding, I fail to process how a denial, which is just as much an end to the same proceeding, is not similarly appealable.

Knoerr then discussed In re Marriage of Alyassir, 335 Ill. App. 3d 998 (2003), and In re Marriage of Colangelo, 355 Ill. App. 3d 383 (2005), which Gutman deemed erroneous to the extent that they treated civil contempt petitions as initiating claims for relief per Rule 304(a). In defending those cases, Knoerr cited a series of earlier cases that purportedly held "that only contempt orders where sanctions have been imposed are final and reviewable" without Rule 304(a) findings. (Emphasis added.) Knoerr, slip op. at 8. The word "only," of course, is central to Knoerr's holding. But it is a total fabrication. In Valencia v. Valencia, 71 Ill. 2d 220, 228 (1978), the court did say that "where no punishment has been imposed an order adjudicating one to be in contempt is not final and is not reviewable," but all this means is that an order adjudicating one to be in contempt, without imposing a sanction, is not final as to the contempt proceeding; an order imposing a sanction is final, but, of course, so is a denial. Knoerr next cited Blake v. Blake, 80 Ill. 523, 524-25 (1875), in which, said Knoerr, "the trial court imposed fines and imprisonment on the defendant, [and the] supreme court stated that such an order was a final and appealable decree." Knoerr, slip op. at 8. Notably absent, however, is any statement that only such an order is a final and appealable decree. Knoerr also mentioned Flaningam v. Flaningam, 331 Ill. App. 418, 420 (1947), and its citation of Lester v. Berkowitz, 125 Ill. 307, 308 (1888), but those cases merely stated the same principle that Valencia did, in substantially the same way.

Finally, with a "cf." signal, Knoerr cited Hill. There, the defendant asserted that the trial court's imposition of a contempt sanction was unappealable because it was not final. But the supreme court held that the judgment was appealable because the contempt proceeding was "a

separate case prosecuted independently" and "a judgment either that [the plaintiff] was guilty of contempt or that he was not is a final judgment." (Emphasis added.) Hill, 292 Ill. at 493. Thus, Hill confirms that a grant and a denial of a civil contempt petition are equally final as to an original and special proceeding, and, as the grant in Hill was therefore immediately appealable, so too is a denial. Knoerr acknowledged the latter quote above, but dismissed it by saying that it was "in [the] context of facts that involved the imposition of imprisonment." Knoerr, slip op. at 8. While the context may demonstrate that the quote is a dictum, this is no cause to disregard it. See People v. Grever, 222 Ill. 2d 321, 336 (2006) (even obiter dictum of a court of last resort can be tantamount to a decision and therefore binding).

Given the import of Hill, Knoerr's use of a "cf." signal is seriously misleading. "Cf." means that the " '[c]ited authority supports a proposition different from the main proposition but sufficiently analogous to lend support.' " People v. Sharpe, 216 Ill. 2d 481, 497 (2005), quoting The Bluebook: A Uniform System of Citation R. 1.2(a), at 47 (18th ed. 2005). The proposition in Hill is obviously different from the main one, but I do not see how it lends any support. Indeed, Hill plainly supports the opposite proposition: that a civil contempt petition initiates an original and special proceeding, the final judgment of which--be it grant or denial--is immediately appealable. That is, Hill supports Gutman, yet Knoerr attempts to evade it by using "cf." As a supreme court justice once put it, "I have been out of law school a long time, but surely the Bluebook does not permit this." People v. Garcia, 188 Ill. 2d 265, 288-89 (1999) (Rathje, J., dissenting, joined by Harrison, J.).

Thus, nothing in Knoerr's case-based attack gives me any pause about the holding in Gutman. I turn now to Knoerr's assertion that we erred in "render[ing] Rule 304(b)(5) superfluous." Knoerr, slip op. at 8. In Gutman, we acknowledged that rule, but we determined that it was only an

application of the principle that a contempt proceeding is original and special, a status that also supports the immediate appealability of a denial of a civil contempt petition.

Knoerr criticized our reasoning as inconsistent with "the principle of inclusio unius est exclusio alterius, which means that the mention of one thing implies the exclusion of another." Knoerr, slip op. at 9. Yet Knoerr went on to observe, as we did in Gutman, that the Committee Comments to Rule 304(b) state that "[i]t is not the intention of the committee to eliminate or restrict appeals from judgments or orders heretofore appealable." 155 Ill. 2d R. 304, Committee Comments, at lxxxiv. Thus, on the one hand, Knoerr says that Rule 304(b)(5) must be read exclusively, and, on the other hand, it acknowledges the comment by which the committee specifically cautioned that Rule 304(b) is not to be read exclusively. In light of that specific statement of intent, Knoerr's reversion to a generic principle is wholly inappropriate.

Perhaps anticipating that response, Knoerr emphasized the comment's use of "heretofore," educated us on the definition of that word, and asserted that "no case or rule prior to the enactment of Rule 304(b) [in 1969] held that a contempt order that did not impose sanctions of fines or imprisonment was appealable without a Rule 304(a) finding." (Emphasis added.) Knoerr, slip op. at 9-10. Interestingly, however, Rule 304(b)(5) was not included in the original Rule 304(b). The committee explained:

> "Judgments imposing sanctions for contempt of court are not included *** because a contempt proceeding is 'an original special proceeding, collateral to, and independent of, the case in which the contempt arises,' and a judgment imposing a fine or sentence of imprisonment for contempt is therefore final and appealable. [Citation.] The judgment thus

disposes of the entire independent contempt proceeding." 155 Ill. 2d R. 304, Committee Comments, at lxxxv.

In this comment, the committee acknowledged that a final judgment in a contempt proceeding was "heretofore" immediately appealable without a Rule 304(a) finding. To be sure, it mentioned only the imposition of a sanction as a final judgment in a contempt proceeding; but, per Hill, the denial of a contempt petition was also "heretofore" a final judgment in a contempt proceeding. Thus, indeed, the denial of a civil contempt petition was "heretofore" immediately appealable without a Rule 304(a) finding, and Rule 304(b)(5) did nothing to disturb this.

As questionable as Knoerr may be for its holding, it is at least as questionable for its disregard of stare decisis. That doctrine " 'expresses the policy of the courts to stand by precedents and not to disturb settled points.' " People v. Caballes, 221 Ill. 2d 282, 313 (2006), quoting Neff v. George, 364 Ill. 306, 308-09 (1936).

"The doctrine of stare decisis is the means by which courts ensure that the law will not merely change erratically, but will develop in a principled and intelligible fashion. Stare decisis permits society to presume that fundamental principles are established in the law rather than in the proclivities of individuals. The doctrine thereby contributes to the integrity of our constitutional system of government both in appearance and in fact. Stare decisis is not an inexorable command. However, a court will detour from the straight path of stare decisis only for articulable reasons, and only when the court must bring its decisions into agreement with experience and newly ascertained facts." Chicago Bar Ass'n v. Illinois State Board of Elections, 161 Ill. 2d 502, 510 (1994).

I know I must be careful to avoid a charge of hypocrisy here. In Gutman, we ruled that Alyassir and Colangelo were out of line with supreme court precedent, and Knoerr said the same thing about Gutman. Thus, Gutman stood by Alyassir and Colangelo no more than Knoerr stood by Gutman. Nevertheless, a distinction exists. As I noted at the outset, Gutman was the law for only 9½ weeks, and then it was gone. Knoerr killed it before it even had a chance to live.

Of course, my view is that Gutman was right (and, indeed, was not even new). But even if it was wrong, this court's virtually immediate about-face did a disservice to its constituents. It sent the very message that stare decisis exists to avoid--that the law may move back and forth, forth and back, for no better reason than that the panels have changed. Discussing stare decisis, Justice Cardozo once observed: "[W]hen a rule, after it has been duly tested by experience, has been found to be inconsistent with the sense of justice or with the social welfare, there should be less hesitation in frank avowal and full abandonment." B. Cardozo, The Nature of the Judicial Process 150 (1921). Here, even if Gutman announced a new rule, the Knoerr panel saw no need to wait for that rule to be "duly tested." It declared that Gutman had "opened the floodgates to piecemeal appeals" (Knoerr, slip op. at 10), but it had not yet felt even a single drop of rain. It declared that Gutman had "departed from a century or more of legal precedent" (Knoerr, slip op. at 10), but, given the message conveyed to the public, Knoerr's departure from Gutman--simply because of its haste--was even worse.

So, what to do now? I can dissent here from the majority's reliance on Knoerr, and I can bide my time until I am on a panel with at least one justice who will join me in overruling it. Of course, it would be only a matter of time until that new case was overruled, and then the overruling case was overruled, and so on in perpetuity. Meanwhile, the public would simply throw up its hands,

marveling at this court's stubborn refusal to perform its core function, to clearly communicate reliable principles of law.

This is too high a price for my adherence to <u>Gutman</u>. I will do what <u>Knoerr</u> should have done, and I will defer to this court's most recent statement of the law. Thus, in this case, I join the majority in following <u>Knoerr</u>, and, in the interest of our constituents, I would urge my colleagues to do the same.