*In re* MARRIAGE OF RICHARD KLOMPS, Petitioner-Appellant, and BARBARA KLOMPS, Respondent-Appellee.

Fifth District   No. 5—96—0351

Opinion filed February 7, 1997.

Douglas E. Dusek, of Dusek & Lopinot, of Belleville, for appellant.

Robert E. Wells, Jr., and Patricia H. Kievlan, both of Pessin, Baird, Wells & Ward, of Belleville, for appellee.

JUSTICE HOPKINS delivered the opinion of the court:

Richard Klomps appeals from the order of the St. Clair County circuit court which set child support for his two minor children at 25% of his net income from his wages for his current employment and 25% of his net income from his monthly military pension derived from his former United States Air Force service. Richard argues that the trial court erred in using his retirement benefits for assessing the proper level of child support, since those benefits were previously determined to be marital property and Barbara Klomps, Richard's ex-wife, was awarded a share of those benefits in the judgment of dissolution. We disagree with the argument that the court erred in using Richard's share of his retirement income for assessing child support, and therefore, we affirm.

## I. FACTS

Richard and Barbara were married in 1974. During the marriage, three children were born, two of whom were minors at the time the court entered the most recent child support order. The parties' marriage was dissolved in 1992. At the time the judgment of dissolution was entered, Richard was 43 years old and was a captain in the United States Air Force. At the time of the dissolution, Barbara was awarded custody of the three children, who ranged in age from 8 to 16 years. Richard was ordered to pay child support in the amount of $1,010 per month, which was 32% of his income from the Air Force. Barbara was awarded $500-per-month maintenance. As a part of the property distribution, the court found that Richard's military retirement benefits were marital property. The court awarded Barbara approximately 35% of the retirement benefits as her share of this marital asset.

On April 5, 1993, after the parties each filed a petition to modify

the judgment of dissolution, the court found a substantial change of circumstances, that Richard had been promoted and his income had increased, and as a result, the court increased the level of child support to $1,263 per month.

In November 1993, Richard filed another petition for modification, alleging that he was scheduled for forced early retirement as of January 1, 1994. On January 13, 1994, the court entered a stipulated order decreasing child support to $407 per month. The decreased amount of child support was based upon Richard's only income at the time, the portion of his military pension awarded to him. The parties agreed on the lower amount of child support from Richard's pension "on a non[ ]precedential basis." As a part of the stipulated order, Barbara agreed to permanently waive her right to maintenance, retroactive to the date of Richard's forced retirement, when Barbara was to begin receiving her share of the pension.

On April 13, 1995, the child support award was again reduced, to $331 per month, or 25% of Richard's share of his military pension. The reduced award was based upon the emancipation of the parties' oldest child. The trial court denied Barbara's request to award child support in an amount greater than the statutory guidelines found in the Illinois Marriage and Dissolution of Marriage Act (the Act). 750 ILCS 5/505 (West 1992).

On November 13, 1995, Barbara petitioned the court for an increase in child support, alleging that Richard was employed and that the child support should be increased to an amount equal to 25% of Richard's wages from his employment and his share of the military pension. Richard filed a motion to dismiss Barbara's petition to modify, arguing that the pension could not be used for child support purposes, because it was previously classified as marital property in the dissolution and divided between the parties. The court denied Richard's motion to dismiss.

On March 28, 1996, the court held a hearing on Barbara's petition for modification and on Richard's motion asking the court to reconsider its denial of his motion to dismiss. At the hearing, the parties each testified about their income and expenses.

On April 4, 1996, the court entered an order denying Richard's motion to reconsider. The trial court stated in its order:

"[The Act] *** defines 'net income' as 'the total of all income from all sources' with certain listed deductions. Military retirement pay is not one of the listed exceptions, and the Court finds it is properly considered to be income of the parties."

See 750 ILCS 5/505(a) (West 1992). The court also found a substantial change in circumstances and granted Barbara's petition to modify

the child support award. The court found that Richard's income from his employment and his pension was "approximately $2945." Based on a net income of $2,945, the court ordered Richard to pay 25% of that amount, $736 per month, in child support for his two minor children.

Richard appeals from the denial of his motion to dismiss and from the order awarding child support from his military pension.

## II. DISCUSSION

Richard argues that the trial court erred in including as income for child support purposes the portion of his military pension awarded to him in the parties' property distribution. Essentially, Richard's argument is that once an asset is classified as marital property, it cannot later be reclassified as income for child support purposes. He is simply wrong.

Richard's argument relies heavily upon his assertion that the case of *In re Marriage of Harmon*, 210 Ill. App. 3d 92 (1991), "is authority that an item may be a marital asset or income, but not both." We disagree that *Harmon* is authority for such a sweeping rule, but to the extent that *Harmon* can be interpreted that way, we decline to follow it.

In *Harmon*, the Second District Appellate Court affirmed the trial court's child support award in an amount below the statutory guidelines (750 ILCS 5/505(a)(1) (West 1992)), based upon evidence that the custodial father had adequate resources to support the children on his income and the noncustodial mother had health problems, was a recovering alcoholic, and was unemployed. *Harmon*, 210 Ill. App. 3d at 97. The court in *Harmon* also agreed with the noncustodial mother's argument that the monthly interest payments she received from the custodial father "should not be used to calculate her net income" for child support purposes. *Harmon*, 210 Ill. App. 3d at 96. Under the circumstances of that case, where the father had custody of the children and was paying the noncustodial mother $750 monthly interest as part of the property settlement, the court determined that it was not necessary to include that amount in determining the mother's net income for child support purposes.

Richard contends that the facts of this case are similar to the facts in *Harmon* and that we should rule the same. We decline to do so. First, the outcome of the *Harmon* case, that the interest payments made by the father to the mother should not be used in determining the mother's net income, should be limited to the particular facts of that case, in which the custodial father was found to have the ability to support the children on his income alone. That the interest pay-

ments from the father to the mother were not used for setting child support did not make it more difficult for the father to support the children in the lifestyle to which they were accustomed and did not leave any of the children's reasonable expenses unpaid. Quite the opposite is true in the case at bar, where the child support has gone from $1,263 per month to its current level of $736 per month and Barbara testified that she was unable to pay for the children's expenses without the child support from Richard's retirement income, and even then, the children will not be able to live the lifestyle they would have enjoyed if the marriage had continued.

The second reason we decline to follow *Harmon* is that any ruling allowing the interest payments to be excluded from the mother's net income is, in our view, contradictory to the clear terms of the Act. Therefore, to the extent that *Harmon* is interpreted to allow sources of income not specifically listed in sections 505(a)(3)(a) through (a)(3)(h) to be excluded from a noncustodial parent's net income, we decline to follow it. *Harmon*, 210 Ill. App. 3d 92; 750 ILCS 5/505(a)(3) (West 1992).

■ One of the primary and overriding purposes of the Act is to "make reasonable provision for spouses and minor children during and after litigation." 750 ILCS 5/102(5) (West 1992). When making decisions about the distribution of the property belonging to the parents of minor children in the unfortunate event of a dissolution, "the primary objective of the court is to provide adequate support for" the children. *In re Marriage of Hart*, 194 Ill. App. 3d 839, 849 (1990).

■ Just as the trial court found, the Act requires the court to set child support as a percentage of the noncustodial parent's net income. 750 ILCS 5/505(a)(1) (West 1992). Net income for child support purposes is broadly defined as "the total of all income from all sources," minus certain specified deductions. 750 ILCS 5/505(a)(3) (West 1992). Retirement pay of the sort Richard receives is not specified as one of the listed deductions, nor does Richard argue that it is. Richard argues only that once they are classified as marital property, his retirement funds should not be reclassified as income for child support purposes. However, Richard's argument is contrary to the clear terms of the Act, and there is nothing in the Act to authorize excluding from child support any income received by a noncustodial parent simply because it was previously classified as marital property.

■ "Courts are required to give the language employed by the General Assembly in the enactment of a statute its plain and ordinary meaning. [Citation.] Hence, the Act's reference to 'all

sources' must be given effect to include military allowances in the computation of child support." *In re Marriage of McGowan,* 265 Ill. App. 3d 976, 978 (1994). In *McGowan,* the court determined that military allowances paid to a parent by reason of active employment in the armed forces is income for child support purposes. *McGowan,* 265 Ill. App. 3d at 978. The *McGowan* court recognized that the Act's definition of income is broadly interpreted. See *McGowan,* 265 Ill. App. 3d at 978 (and references cited therein).

■ If we are to give effect to the clear language of the Act, we must affirm the trial court's finding that, like pay for active-duty military service, Richard's military pension is income for child support purposes. Clearly, military pensions, at the time that they are paid to the noncustodial parent, are income for child support purposes. See *Childerson v. Hess,* 198 Ill. App. 3d 395 (1990) (wherein child support was assessed upon the father's social security and pension income); see also *In re Marriage of Dodds,* 222 Ill. App. 3d 99, 101 (1991) (wherein the Second District Appellate Court found that a lump-sum workers' compensation award for an injury occurring after the dissolution could be used for child support purposes). The holding in *Dodds* was based upon section 706.1 of the Act, which defines income as "any form of periodic payment to an individual, regardless of source, including, but not limited to: wages, salary, commission, compensation as an independent contractor, workers' compensation, disability, annuity and *retirement benefits.*" (Emphasis added.) 750 ILCS 5/706.1(A)(4) (West 1992); *Dodds,* 222 Ill. App. 3d at 101.

We analogize Richard's retirement benefits to the accounts receivable of the business interests of divorcing spouses. The accounts receivable of a divorcing spouse's business are often used to assess the value of the spouse's business, whether classified as marital or nonmarital property. The income from those same accounts receivable, when actually received, is then available for use in determining net income for child support purposes.

In *In re Marriage of Lee,* 246 Ill. App. 3d 628 (1993), the court ruled that the valuation of the husband's medical practice for property distribution purposes could include the accounts receivable of that business. In the same decision, the court also affirmed the trial court's award of child support, which was based on the husband's net income from the same medical practice. Likewise, in *In re Marriage of Tietz,* 238 Ill. App. 3d 965 (1992), the husband in the dissolution action was a practicing attorney. In *Tietz,* the court set child support at a percentage of the husband/attorney's net monthly income from his law practice and also allowed his accounts receivable from the same practice to be used in establishing the value of the husband's practice for property distribution purposes.

The husband/attorney in *Tietz* made an argument that is similar to the one Richard makes in this case. In *Tietz*, the noncustodial husband's law practice was found to be marital property. The husband/attorney argued that the accounts receivable from that business should not be used to establish the value of that marital asset but should only be used to determine his income for setting child support and maintenance. The court rejected the husband/attorney's argument, finding that the accounts receivable were already earned, with a known value, but had not yet been collected, and the court allowed the accounts receivable to be used in setting the value of the law practice. *Tietz*, 238 Ill. App. 3d at 977. The appellate court in *Tietz* also affirmed the trial court's award of child support, where the noncustodial husband's income was generated from the same law practice that was determined to be a marital asset, the value of which was in part based upon accounts receivable. *Tietz*, 238 Ill. App. 3d at 978-79.

The accounts receivable described in *Lee* and *Tietz* are similar to Richard's interest in his retirement benefits at the time of the dissolution. At that time, Richard's pension was partially earned, with a known value, but had not yet been collected. The pension was clearly marital property subject to equitable distribution. *In re Marriage of Weiler*, 258 Ill. App. 3d 454 (1994). However, the fact of its classification as marital property prior to the date Richard began collecting it in monthly installments does not bar it from use in determining net income for child support.

There was clear evidence of a change in circumstances when the court accepted the parties' "nonprecedential" stipulated order awarding a much lower amount of child support based only upon Richard's pension income. There was another substantial change in circumstances when Richard took a job to supplement his retirement income, and the court did not abuse its discretion in using all of Richard's income from all sources in setting child support for his two minor children. We find it significant that Richard did not argue that the property distribution was made inequitable by the court's order setting child support from his retirement income. Our review of the record reveals that the property distribution remains fair and equitable.

We have found no case, and we have not been directed by either party to any case, discussing the precise issue raised in this appeal. However, it is plain that the ruling of the trial court herein was in harmony with the clear mandate of the Act. If we were to allow retirement income to be excluded from net income when setting child support merely because those benefits, prior to their receipt,

were used to determine an equitable distribution of the parties' marital property, we would be adding provisions to the Act that do not exist. We will not twist the clear meaning of the Act to invent an otherwise nonexistent rule that would be contrary to the purpose of making "reasonable provision for spouses and minor children during and after litigation." 750 ILCS 5/102(5) (West 1992).

Therefore, we affirm the trial court's denial of Richard's motion to dismiss, and we affirm the April 4, 1996, order modifying child support.

Affirmed.

KUEHN, P.J., and RARICK, J., concur.