No. 2--04--0050

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

In re
 MARRIAGE OF

JULIUS COLANGELO,

Petitioner-Appellee,

and

VICKI D. SEBELA,

Respondent-Appellant.

)

)

)

)

)

)

)

)

)

)

Appeal from the Circuit Court

of Du Page County.

No. 01--D--0036

Honorable

Dorothy F. French,

Judge, Presiding.

______________________________________________________________________________

JUSTICE KAPALA delivered the opinion of the court:

In postdissolution proceedings, respondent, Vicki D. Sebela (Vicki), appeals (1) an order denying her petition for a rule to show cause against petitioner, Julius Colangelo (Julius); and (2) an order granting summary judgment to Julius (see 735 ILCS 5/2--1005(c) (West 2002)) on Vicki's petition to increase child support
.  
Vicki argues that the trial court erred in deciding that, as a matter of law, (1) Julius's stock bonuses were not income for purposes of calculating child support (see 750 ILCS 5/505(a)(3) (West 2002)); and (2) there had been no substantial change in circumstances since the dissolution judgment (see 750 ILCS 5/510(a)(1) (West 2002)).  We reverse both the order denying Vicki's petition for a rule to show cause and the grant of summary judgment on Vicki's petition to increase child support.  We also remand the cause.

The parties married in 1988 and have an adopted son, Ethan, born in 1999.  On September 9, 2002, the trial court dissolved the marriage. At that time, Julius worked for Navigant Consulting, Inc. (NCI), earning $147,500 annually.  Vicki was a full-time homemaker who wrote a newspaper column, earning $840 annually.  The trial court divided the marital property with the intent to award 48% to Julius and 52% to Vicki.  As pertinent here, Julius received 50% of the net value of vested stock options in NCI "if & when *** exercised" and 100% of unvested stock options in NCI.  Because the vested and unvested stock options had yet to be exercised, the judgment listed their value as "unknown."  In all, Julius's share of the marital property was valued at $152,777 plus his 50% share of the vested stock options and his 100% share of the unvested stock options.  Vicki's share of the marital property was valued at $164,264 plus her 50% share of the vested stock options. The parties received joint custody of Ethan, with Vicki the "primary residential parent."  Julius was ordered to pay monthly child support of $1,656, which was 20% of what the court calculated as his net monthly income (see 750 ILCS 5/505(a)(1) (West 2002)).  Also, the court ordered Julius to pay, as child support, "20% of net of any bonus/commission/overtime received."

On October 28, 2003, Vicki filed two pleadings.  The first, a petition to increase child support, alleged that Julius's W-2 form for 2002 showed that the dissolution judgment was based on a miscalculation of his net income. The petition also alleged that, in 2003, federal tax rates had declined substantially, while federal tax deductions for dependent minors had increased.  Finally, according to the petition, since the dissolution, Vicki's child-related expenses had increased.

The second pleading, a petition for a rule to show cause, had two counts.  Count I alleged that, since the dissolution, Julius had received 2,286 shares of NCI stock under a "value sharing compensation agreement"; that the shares were income of which Julius owed 20% as child support; and that Julius had refused to pay any of this amount.  Count II alleged that, late in 2002, Julius received a cash bonus from NCI; that, as a result, he owed extra child support; and that he had paid only part of what he owed.  Vicki claimed that Julius was in contempt for refusing to pay any child support based on the 2,286 shares of NCI stock and for underpaying the bonus-based support.

Julius filed a response to the petition for a rule to show cause.  In answering count I, he asserted that the receipt of the NCI stock resulted from his exercise of the unvested stock options that he had received under the dissolution judgment and that had since become vested.  Thus, the 2,286 shares were marital property that had, in essence, already been allocated to him.  Julius reasoned that because the unvested options were his property, the distributions resulting from an exercise of the options could not also be income.  Responding to count II, Julius asserted that he had paid Vicki the full amount of bonus-based child support.

On November 10, 2003, the trial court ruled on Vicki's petition for a rule to show cause.  The court denied Vicki any relief on count I.  The court's only basis for its ruling was that the unvested stock options were marital property and, therefore, could not, when realized, be considered income for child support purposes.  With regard to count II, the court ruled in Vicki's favor and ordered Julius to pay additional child support that was related to the cash bonus.

On November 20, 2003, Julius moved to dismiss the petition to increase child support (see 735 ILCS 5/2--615 (West 2002)) or to grant summary judgment to him on it.  Julius argued that there had been no substantial change in circumstances since the dissolution judgment (see 750 ILCS 5/510(a) (West 2002)).  Specifically, Julius asserted, his W-2 forms proved that his base salary was still $147,500 a year.  Also, while he had received bonus income in the interim, Vicki had received 20% of the net amount as child support.  Julius next argued that the trial court's original calculation of his net income was correct.  Finally, he maintained that, although federal tax rates had decreased since the dissolution, any effect on his taxes was negligible.  As support for his contention, Julius claimed that a table for 2003, 
prepared by a commercially available computer software program that, in part, computes child support and taxes, and a table that the court used in crafting the dissolution judgment in 2002, produced by the same commercially available software program, showed that child support would increase only 3.2%.  Julius's motion was not notarized, attached no affidavits, and did not purport to authenticate the attached copies of the tables.

On December 16, 2003, after a short hearing, the trial court denied Julius's motion to dismiss the petition for increased child support but granted summary judgment to him on the petition.  The court observed that the dissolution judgment stated that Julius's yearly salary was $147,500 and that Vicki had admitted that he was still receiving that salary.  Also, the change in federal tax rates was irrelevant because the dissolution judgment was not based on "actual taxes" and, even had it been, Vicki had produced no evidence of a substantial change in circumstances.

On January 15, 2004, Vicki filed a notice of appeal, from the order of November 10, 2003, denying her petition for a rule to show cause and the order of December 16, 2003, granting summary judgment to Julius on her petition to increase child support.

Julius argues that we lack jurisdiction to consider any challenges to the order denying Vicki's petition for a rule to show cause.  We disagree.  The trial court denied Vicki's petition on November 10, 2003.  However, Vicki did not file a notice of appeal from this order until January 15, 2004.  The timely filing of a notice of appeal is mandatory and jurisdictional.  155 Ill. 2d R. 301; 
In re Estate of Kunsch
, 342 Ill. App. 3d 552, 553 (2003).  Under Supreme Court Rule 303(a)(1), an appeal from a final judgment in a civil case must be filed within 30 days of the entry of the judgment appealed or within 30 days after the entry of the order disposing of the last timely pending postjudgment motion.  See 155 Ill. 2d R. 303(a)(1).  Vicki argues that the order was not final because it left her petition for increased child support pending and did not include language allowing an immediate appeal under Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)).  Rule 304(a) applies "[i]f multiple parties or multiple claims for relief are involved in an action." 155 Ill. 2d R. 304(a).

A final judgment terminates the litigation between the parties on the merits or disposes of the parties' rights with regard to either the entire controversy or a separate part of it. 
R.W. Dunteman Co. v. C/G Enterprises, Inc.
, 181 Ill. 2d 153, 159 (1998).  The word "claim," as used in Rule 304(a), means "any right, liability or matter raised in an action."  
Marsh v. Evangelical Covenant Church of Hinsdale
, 138 Ill. 2d 458, 465 (1990).  The test for determining whether the order from which a party attempts to appeal pursuant to Rule 304(a) constitutes a final order on a claim is "whether the order appealed from constitutes a final determination of the parties' rights with respect to a definite and separate portion of the subject matter." 
Krivitskie v. Cramlett
, 301 Ill. App. 3d 705, 707 (1998).

A petition for a rule to show cause is the beginning step in initiating contempt proceedings.  This court discussed the nature of an order denying a petition for a rule to show cause in 
In re Marriage of Alush
, 172 Ill. App. 3d 646 (1988).  
Alush
 involved postdissolution proceedings in which the petitioner sought a rule to show cause against the respondent because the respondent removed the minor children contrary to the terms of the divorce decree.  
Alush
, 172 Ill. App. 3d at 647-49.  The trial court denied the petition.  
Alush
, 172 Ill. App. 3d at 649.  The trial court also made a finding pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)) that there was no just reason to delay enforcement or appeal.  
Alush
, 172 Ill. App. 3d at 649.  On appeal, the respondent contended that this court was without jurisdiction to consider the petitioner's appeal because the respondent's petition to modify the divorce decree was still pending in the trial court.  
Alush
, 172 Ill. App. 3d at 649.  We held:

"In his petition for rule to show cause, [petitioner] sought to have [respondent] held in contempt. A contempt proceeding is an original special proceeding which is collateral to and independent of the case in which the contempt arises. (
People ex rel. Scott v. Silverstein
 (1981), 87 Ill. 2d 167, 172.)  The court's order *** disposed of the rights of the parties with regard to the petition for rule to show cause, which was a separate, independent proceeding. Accordingly, the denial of the petition for rule to show cause is a final and appealable order and Nancy's motion to dismiss the appeal is denied."  
Alush
, 172 Ill. App. 3d at 650.

This court had occasion to address the holding in 
Alush
 in 
In re D.J.E.
, 319 Ill. App. 3d 489 (2001).  We stated that the judgment at issue in 
Alush
 was a final judgment that"may be appealed if the trial court has made the requisite finding under Rule 304(a)."  
D.J.E.
, 319 Ill. App. 3d at 495.  More recently, this court held that the denial of a motion to increase child support filed in a postdissolution proceeding was not appealable, absent a Rule 304(a) finding, because a second count requesting a rule to show cause had not yet been resolved.  
In re Marriage of Alyassir
, 335 Ill. App. 3d 998, 999-1001 (2003).

We conclude from the aforementioned cases that the denial of a petition for a rule to show cause filed in postdissolution proceedings is not a final and appealable order when other postdissolution proceedings are still pending.  Therefore, such an order is not immediately appealable unless a Rule 304(a) finding is made.  The fact that a contempt proceeding, including the petition for a rule to show cause, is an original special proceeding that is collateral to and independent of the case from which the contempt arises merely establishes that the denial of the petition amounts to a final judgment as to a claim within the meaning of Rule 304(a).  Because Vicki's petition for increased child support was pending and no Rule 304(a) finding was made, Vicki could not appeal from the judgment until her petition for increased child support was resolved.  Therefore, her notice of appeal was timely and we have jurisdiction to consider the trial court's denial of the petition for a rule to show cause.

Having determined that we have jurisdiction, we now turn to the merits of Vicki's first claim.  Vicki claims that Julius's stock distributions should be considered income such that 20% of the value of the stock distributions should be paid as child support.  Julius contends that the doctrines of 
res
 
judicata
 and law of the case bar such an interpretation.  Julius further contends that to count the stock distributions as income would amount to double counting the value of the asset because it was previously distributed to the parties as property.  We agree with Vicki that the trial court should have considered Julius's stock distributions as income for child support purposes.

First, we find that 
res
 
judicata
 and law of the case do not aid Julius.  The doctrine of 
res
 
judicata
 has three elements: a final judgment on the merits rendered by a court of competent jurisdiction, an identity of cause of action, and an identity of parties or their privies.  
LP XXVI, LLC v. Goldstein
, 349 Ill. App. 3d 237, 240 (2004).  When all three elements are satisfied, the prior action will be conclusive to all actions that were or properly could have been raised.  
LP XXVI, LLC
, 349 Ill. App. 3d at 240.  "The law of the case doctrine provides that rulings on points of law made by a court of review are binding in that case upon remand to the trial court and on subsequent appeals to that same reviewing court unless a higher court has changed the law."  
Emerson Electric Co. v. Aetna Casualty & Surety Co.
, 352 Ill. App. 3d 399, 417 (2004).  The trial court did not rule on the issue of whether Julius's stock distributions could be considered income for child support purposes, nor has this court.  The trial court awarded the stock options as marital property but had also previously ruled that Julius was to pay "[20%] of net of any bonus/commission/overtime received."  Prior to ruling on the petition for a rule to show cause, the trial court did not rule on whether the stock at issue was a bonus that was income for child support purposes.

Second, we note that the trial court allocated the unvested stock options to Julius.  These stock options subsequently became vested and were distributed, and it is this distribution that is at issue.  Because the unvested stock options transformed into a realized distribution, it would seem that the distribution is not marital property being counted as income, but instead the fruits of the marital property.  However, even if the stock distribution is marital property as Julius claims, the pertinent case law persuades us that marital property can also be income for child support purposes.  In 
In re Marriage of Klomps
, 286 Ill. App. 3d 710 (1997), the court ruled that the petitioner's retirement benefits constituted income for child support purposes even though the same retirement benefits had been divided as marital property.  
Klomps
, 286 Ill. App. 3d at 713-17.  The court found that section 505(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/505(a) (West 2002)) compelled such a result.  
Klomps
, 286 Ill. App. 3d at 713-17.  Section 505(a)(3) states:

"(3) 'Net income' is defined as the total of all income from all sources, minus the following deductions:

(a) Federal income tax (properly calculated withholding or estimated payments);

(b) State income tax (properly calculated withholding or estimated payments);

(c) Social Security (FICA payments);

(d) Mandatory retirement contributions required by law or as a condition of employment;

(e) Union dues;

(f) Dependent and individual health/hospitalization insurance premiums;

(g) Prior obligations of support or maintenance actually paid pursuant to a court order;

(h) Expenditures for repayment of debts that represent reasonable and necessary expenses for the production of income, medical expenditures necessary to preserve life or health, reasonable expenditures for the benefit of the child and the other parent, exclusive of gifts. The court shall reduce net income in determining the minimum amount of support to be ordered only for the period that such payments are due and shall enter an order containing provisions for its self-executing modification upon termination of such payment period."  750 ILCS 5/505(a)(3) (West 2002).

The court in 
Klomps
 held that, because the petitioner's retirement benefits met the definition of income for child support purposes and none of the deductions were applicable, the "clear language" of section 505(a)(3) required that the retirement benefits be considered income despite the fact that they had been considered marital property previously.  
Klomps
, 286 Ill. App. 3d at 714-15.

We note that in 
In re Marriage of Harmon
, 210 Ill. App. 3d 92 (1991), 
overruled
 
on
 
other
 
grounds
 
by
 
In re Marriage of Rogers
, 213 Ill. 2d 129 (2004), this court found that monthly interest payments made to a noncustodial parent by a custodial parent were not income for purposes of fixing the amount of child support because they comprised a share of the marital assets.  
Harmon
, 210 Ill. App. 3d at 96.  This holding seems to comport with Julius's theory that marital property cannot be income for purposes of determining child support because this would give a double benefit
.  However, 
Harmon
 cited 
In re Marriage of Hart
, 194 Ill. App. 3d 839 (1990), as authority for its conclusion.  
Harmon
, 210 Ill. App. 3d at 96.  The 
Hart
 court simply stated that, when marital assets are awarded, in part, because they come with the duty to repay marital debts associated with those assets, the marital debts should not be deducted from income for child support purposes because to do so would amount to a double benefit, that is, the receipt of the marital assets and a decreased amount of child support to pay.  
Hart
, 194 Ill. App. 3d at 
850.  There are, however, pronounced differences between 
Harmon
 and 
Hart
. 
 First, in 
Hart
 the court dealt with a deduction for a debt, whereas in 
Harmon
 the court dealt with a deduction for the receipt of money.  
Second, in 
Harmon
 the deduction claimed by the payor parent was itself a marital asset, whereas in 
Hart
 the claimed deduction was not a marital asset.  Third, in 
Harmon
 the court's ruling avoided giving a double benefit to the parent receiving the child support, but in 
Hart
 the court was concerned about a double benefit accruing to the payor parent.  Fourth, the court 
in 
Hart
 determined, in effect, that a reduction in net income was not warranted, whereas the holding in 
Harmon
 determined that a reduction in net 
income was warranted.
  With these differences in mind, we do not agree that 
Hart
 supports the proposition that 
Harmon
 urges.

Also, we find that the decision in 
Harmon
 cannot stand given the plain language of the Act.  As we discussed above, section 505(a)(3) provides the exclusive list of what can be deducted to determine net income for purposes of child support.  The decision in 
Harmon
 effectively adds another deduction to the list, namely, items that would otherwise be income but were previously distributed as a marital asset.  This amounts to judicial amendment of the statute, a practice that a court cannot and should not engage in.  See 
Wade v. City of North Chicago Police Pension Board
, No. 2--04--0047, slip op. at 13 (December 3, 2004).  Furthermore, 
Hart
, like 
Klomps
, recognized that the plain language of section 505 should be followed when determining whether a deduction is appropriate in calculating net income for purposes of child support.  
Hart
, 194 Ill. App. 3d at 850-51 (finding that the trial court's deduction for "nonrecurring income" was in error because section 505 does not provide for such a deduction and holding that "[t]he trial court's responsibility is to determine child support payments as required by section 505 of the Act"). Thus, we reject the holding in 
Harmon
 as contrary to the plain and express language of section 505(a)(3).  We find the reasoning in 
Klomps
 to be more persuasive.

In this case, Julius was to pay 20% of any bonus as child support.  The trial court characterized the stock award to Julius as a bonus.  The trial court stated:

" All right.  And this is something that was actually previously awarded to him.  I think that's where it turns on.  I think that this was a bonus that was provided to him prior to February 28th of 2002, because it was awarded to him, but it hadn't vested.  He realizes it now."

The trial court ultimately held:

"You know, I am going to deny the motion with regard to Count 1.

* * *

And the basis is that the Court has defined this as property.  And to me it would be the same as if you received a piece of real estate, and then after the judgment, sold the real estate and got capital gains on it.  And now this is considered to be income, and that is income, but it's not income for purposes of child support, because it's property that was divided in a judgment for dissolution."

Julius's contention is that once the stock options were allocated as marital property, they could not later be classified as income for child support purposes.  Julius does not dispute that if the stock options had not been awarded as marital property, they would meet the definition of "income" once distributed.  Further, the trial court's child support order listed bonuses as one source of income, and there is no deduction listed in section 505(a)(3) for a stock bonus.  Therefore, under 
Klomps
, we find that, even though the unrealized stock options were allocated to the parties as marital property, the realized stock distribution met the definition of "income" for purposes of determining child support, and the trial court erred in finding that the stock distribution was not income.  Thus, we reverse the trial court's denial of Vicki's petition for a rule to show cause and remand for further proceedings.

We now turn to the order granting summary judgment to Julius on Vicki's petition to increase child support.  Vicki argues that there are unresolved issues of fact that bear on whether she will be able to prove a substantial change in circumstances since the dissolution judgment (see 750 ILCS 5/510(a)(1) (West 2002)).

Summary judgment is proper when the pleadings, depositions, and other matters on file establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  735 ILCS 5/2--1005(c) (West 2002).  Our review is 
de novo
.  
Espinoza v. Elgin, Joliet & Eastern Ry. Co.
, 165 Ill. 2d 107, 113 (1995). 

Vicki's petition to increase child support alleged that circumstances had changed substantially since the dissolution because both the costs of rearing Ethan and Julius's ability to contribute to those costs had increased.  Julius did not deny that Vicki's child-related expenses had increased, but he contended that his ability to pay had not changed.  In granting summary judgment to Julius, the trial court relied on Vicki's admission that Julius's base pay had not changed since the dissolution judgment and the fact that the judgment was not based on "actual taxes."  However, this reasoning missed the point.  Vicki relied not on any increase in Julius's gross salary but on the alleged miscalculation of his 
net
 income and on changes in the federal tax laws, which, she claimed, increased Julius's 
net
 income.  These are potentially meritorious grounds for increasing child support, as child support is to be based on the payor spouse's net income.  See 750 ILCS 5/505(a)(1) (West 2002).  Thus, even though Julius's salary was unchanged, that did not establish that his ability to pay had not increased.

Julius asserted that his ability to pay had not substantially increased because any changes in the federal tax rates had only marginally affected his net income.  However, Julius's sole support for this contention was the unsworn assertions in his motion for summary judgment and the unsworn and unauthenticated tables that were attached to his motion.  Unsworn, unverified statements may not be considered in ruling on a motion for summary judgment.  
Rotzoll v. Overhead Door Corp.
, 289 Ill. App. 3d 410, 418 (1997); see 
Lewis v. Illinois Institute of Technology
, 50 Ill. App. 3d 418, 420 (1977).  Because there was a question of fact as to whether Julius's net income had substantially increased and there was nothing but unsworn assertions and unauthenticated documents supporting Julius's motion for summary judgment, the trial court should not have granted the motion.  Therefore, we reverse the grant of summary judgment and remand the cause on Vicki's petition to increase child support.

Reversed and remanded.

O'MALLEY, P.J., and GILLERAN JOHNSON, J., concur.