# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

*In re Marriage of McGrath*, 2012 IL 112792

---

| | |
|---|---|
| Caption in Supreme Court: | *In re* MARRIAGE OF MARY ELLEN McGRATH, Appellee, and MARTIN GIBBONS McGRATH, Appellant. |
| Docket No. | 112792 |
| Filed | May 24, 2012 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Illinois law and statutes do not permit monthly savings-account withdrawals on which an unemployed ex-husband was living to be considered his "income" for purposes of child support; but, on remand, if the court finds that an appropriate support amount cannot be generated by following statutory guidelines, it should so state, explain its reasons for deviating therefrom, and make an adjusted award. |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Kathleen G. Kennedy, Judge, presiding. |
| Judgment | Appellate court judgment reversed.<br>Circuit court judgment reversed.<br>Cause remanded. |

Counsel on
Appeal

Paul L. Feinstein, of Chicago, for appellant.

Pasulka & Associates, P.C., of Chicago (Mitchell B. Gordon, David P. Pasulka and Molly E. Caesar, of counsel), for appellee.


Justices

JUSTICE THOMAS delivered the judgment of the court, with opinion.

Chief Justice Kilbride and Justices Freeman, Garman, Karmeier, Burke, and Theis concurred in the judgment and opinion.


# OPINION

¶ 1    At issue is whether money that an unemployed parent regularly withdraws from a savings account may be included in the calculation of net income when setting child support under section 505 of the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/505 (West 2010)). We hold that it may not.


¶ 2                                BACKGROUND

¶ 3    On September 14, 2007, the circuit court of Cook County entered a judgment dissolving the marriage of petitioner Mary Ellen McGrath and respondent Martin McGrath. The dissolution judgment incorporated a marital settlement agreement and a joint parenting agreement. The agreements provided that the parties' twin children would reside with petitioner, and the parties agreed to contribute to the children's various expenses. Respondent was unemployed at the time that the judgment was entered, so the issue of child support was reserved. The agreements provided that "the issue of additional contribution by Martin to the support of the parties' children may be addressed by either party pursuant to agreement or petition to the court."

¶ 4    Petitioner subsequently petitioned the court to determine child support. Respondent testified at the hearing that he was currently unemployed and living off assets that were awarded to him as part of the marital estate. Each month he withdraws around $8,500 from his savings account to meet his expenses. In an order dated February 23, 2010, the circuit court ordered respondent to pay $2,000 per month in child support. The court explained that it was *not* imputing income to respondent, but was basing the amount of child support on "Martin's living expenses and the assets which are available to him to meet his living expenses."[1] In explaining its thoughts on the case from the bench, the circuit court stated:

_____

[1]The appellate court has held that income may be imputed to a noncustodial parent if one of the following factors is present: (1) the payor is voluntarily unemployed; (2) the payor is attempting to evade a support obligation; or (3) the payor has unreasonably failed to take advantage

-2-

"So there is case law in Illinois that provides that when one parent is receiving or obtaining money on a regular basis even if it's not from employment that it may be used and should be used as support for the children. So I believe that's the law, the case law that's applicable in this case and so I believe there is an obligation to support the children with this regularly coming in money."

¶ 5 Respondent moved to reconsider and vacate the support order. The circuit court denied respondent's motion, and entered another written order that explained how the court had arrived at the $2,000 figure. The court stated:

"The entry of a child support order is discretionary, but the determination of the minimum guidelines child support amount is mandatory. See 750 ILCS 5/505(a). In the February 23, 2010 order the court based child support on the funds Martin McGrath accesses on a regular basis to support himself in lieu of earning an income. However, the court did not expressly begin, as it must, with a determination of the minimum amount of support using the guidelines. See 750 ILCS 5/505(a)(1). Although not explicit, the court effectively used Martin McGrath's passive net income of $8,500 per month, calculated the 28% guidelines, which is $2,380, and deviated downward from the guidelines by $380 per month to $2,000 per month without making the requisite finding that application of the guidelines would be inappropriate in this case and without stating the reasons for the variance from the guidelines. See ILCS 5/505(a)(2)."

¶ 6 The court further explained that it believed that its decision was supported by two appellate court cases, *In re Marriage of Lindman*, 356 Ill. App. 3d 462 (2005), and *In re Marriage of Eberhardt*, 387 Ill. App. 3d 226 (2008), which held that IRA disbursements could be included in a calculation of net income under section 505 of the Act. The court found that respondent's financial circumstances did not fit neatly into the statutory scheme because he was unemployed but using his assets to maintain a lifestyle in which his household expenses were similar to petitioner's expenses for a household of three. The court explained that respondent's "use of assets to maintain his lifestyle supports treating them as income and calculating a minimum amount of child support on that basis." The court thus concluded that respondent's monthly net income for child support purposes was $8,173.69—$8,500 that he withdraws from his savings account, plus $171.69 from interest and dividends, minus a $498 health and hospitalization premium. The statutory 28% of that amount was $2,288.63, and the court made a finding under section 505(a)(2) that this figure was inappropriate and should be adjusted downwards by $288.63.

¶ 7 Respondent appealed, and the Appellate Court, First District, affirmed. 2011 IL App (1st) 102119. Respondent argued in that court that it was error for the circuit court to include money he withdraws from his savings account in its calculation of his net income.

---

of an employment opportunity. *In re Marriage of Gosney*, 394 Ill. App. 3d 1073, 1077 (2009). In explaining why it was not imputing income, the trial court stated that it was making no assessment of respondent's employability and was treating this not as a case of a voluntarily unemployed parent, but rather as one of a parent who uses assets as a substitute for income rather than seek employment.

Respondent relied on *In re Marriage of O'Daniel*, 382 Ill. App. 3d 845 (2008), in which the Fourth District rejected the holdings of the cases that the trial court relied on and held that the money withdrawn from an IRA is not income. The appellate court held that it did not need to resolve the conflict in the appellate court over whether IRA withdrawals can be considered income under section 505(a) because this case does not involve an IRA. 2011 IL App (1st) 102119, ¶ 10.

¶ 8        The court explained that the money respondent withdraws from his savings account was properly included in the circuit court's calculation of "net income" because the statute's definition of "net income" is expansive: "the total of all income from all sources." *Id.* ¶ 11 (quoting 750 ILCS 5/505(a)(3) (West 2010)). The Act details specific exclusions from "net income" (see 750 ILCS 5/505(a)(3)(a) to (h) (West 2010)), but the appellate court concluded that "[t]here are no provisions in the Act excluding Martin's monthly withdrawals from the definition of 'net income.' " 2011 IL App (1st) 102119, ¶ 11. The appellate court further explained that "[a]n unemployed parent who lives off regularly liquidated assets is not absolved of his child support obligation." *Id.* Although it had previously stated that the issue before it was one of statutory interpretation reviewed de novo (*id.* ¶ 6), the appellate court concluded that it could not find that the circuit court had abused its discretion in including savings account withdrawals in its calculation of "net income" (*id.* ¶ 11). We allowed respondent's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010).

¶ 9                                            ANALYSIS

¶ 10        The sole issue respondent raises is that the trial court erred in including funds he regularly withdraws from his savings account in its calculation of his net income for child support purposes.[2] Because this issue involves solely a question of law—how to interpret the term "net income" in section 505 of the Act—our review is *de novo*. *In re Marriage of Rogers*, 213 Ill. 2d 129, 135-36 (2004). As this court explained in *Rogers*, the proper interpretation of a statute is not left to the trial court's discretion. *Id.*

¶ 11        Section 505(a)(1) of the Act provides guidelines for the minimum amount of child support. For two children, that figure is 28% of a party's net income. "Net income" is defined as "the total of all income from all sources." 750 ILCS 5/505(a)(3) (West 2010). The statute then lists several items that are deducted from a party's income to arrive at his or her net income. 750 ILCS 5/505(a)(3)(a) to (h) (West 2010).

¶ 12        The statute, however, allows a court to deviate from the guidelines if it determines that the amount generated is inappropriate:

> "(2) The above guidelines shall be applied in each case unless the court makes a finding that application of the guidelines would be inappropriate, after considering the best interests of the child in light of evidence including but not limited to one or more of the following relevant factors:

---

[2]Because this case does not involve disbursements from an IRA, we agree with the appellate court that this appeal is not the appropriate forum in which to resolve the current split in the appellate court over whether IRA disbursements should be considered income under section 505(a).

-4-

(a) the financial resources and needs of the child;

(b) the financial resources and needs of the custodial parent;

(c) the standard of living the child would have enjoyed had the marriage not been dissolved;

(d) the physical and emotional condition of the child, and his educational needs; and

(e) the financial resources and needs of the non-custodial parent.

If the court deviates from the guidelines, the court's finding shall state the amount of support that would have been required under the guidelines, if determinable. The court shall include the reason or reasons for the variance from the guidelines." 750 ILCS 5/505(a)(2)(a) to (e) (West 2010).

¶ 13 Here, the trial court correctly followed the procedure set forth in section 505(a). It calculated respondent's net income, made a specific finding that 28% of that amount was not appropriate, and adjusted the child support award accordingly. Where the trial court erred, however, was in its initial calculation of respondent's net income, because it included amounts that respondent regularly withdraws from his savings account.

¶ 14 This court noted in *Rogers* that, although the Act provides a definition of "net income"—the total of all income from all sources minus certain deductions—it does not separately define the term "income." Thus, this court explained that the term must be given its plain and ordinary meaning. *Rogers* quoted the following definitions from Webster's and Black's: "something that comes in as an increment or addition *** : a gain or recurrent benefit that is usu[ally] measured in money *** : the value of goods and services received by an individual in a given period of time" (Webster's Third New International Dictionary 1143 (1986)), and "[t]he money or other form of payment that one receives, usu[ally] periodically, from employment, business, investments, royalties, gifts and the like" (Black's Law Dictionary 778 (8th ed. 2004)). *Rogers*, 213 Ill. 2d at 136-37. Money that a person withdraws from a savings account simply does not fit into any of these definitions. The money in the account already belongs to the account's owner, and simply withdrawing it does not represent a gain or benefit to the owner. The money is not coming in as an increment or addition, and the account owner is not "receiving" the money because it already belongs to him.

¶ 15 The appellate court's analysis went off track when it stated that "[t]here are no provisions in the Act excluding Martin's monthly withdrawals from the definition of 'net income'" (2011 IL App (1st) 102119, ¶ 11), for it is the term "income" *itself* that excludes respondent's savings account withdrawals. The appellate court should not have been looking for savings account withdrawals in the statutory deductions from income, because those withdrawals were not income in the first place. We note that, although petitioner's attorney believed that the ultimate amount of child support arrived at by the trial court was appropriate, he conceded at oral argument that the appellate court's analysis was problematic and, when pressed, agreed that he was not going to the mat in defense of that analysis.

¶ 16 The trial and appellate courts were rightly concerned that the amount generated by respondent's actual net income was inadequate, particularly when the evidence showed that

respondent had considerable assets and was withdrawing over $8,000 from his savings account every month. The Act, however, specifically provides for what to do in such a situation. If application of the guidelines generates an amount that the court considers inappropriate, then the court should make a specific finding to that effect and adjust the amount accordingly. One factor that the court can consider in determining that the amount is inappropriate is "the financial resources and needs of the non-custodial parent." 750 ILCS 5/505(a)(2)(e) (West 2010). Thus, calculating respondent's net income correctly does not have to mean that respondent is "absolved of his child support obligation" (2011 IL App (1st) 102119, ¶ 11), as the appellate court feared.

¶ 17                                 CONCLUSION

¶ 18        Because the trial court improperly included money that respondent withdraws from his savings account in its calculation of net income for child support purposes, we reverse its judgment and remand the cause for a new calculation of respondent's child support obligation. The trial court should calculate respondent's net income without regard to amounts that he regularly withdraws from his savings account. The court may then consider whether 28% of this amount is inappropriate based on, *inter alia*, respondent's assets. If the court determines that the amount is inappropriate, it should make the specific finding required by section 505(a)(2) and adjust the award accordingly.

¶ 19        Appellate court judgment reversed.

¶ 20        Circuit court judgment reversed.

¶ 21        Cause remanded.