# Illinois Official Reports

## Appellate Court

---

### *In re Marriage of Marsh*, 2013 IL App (2d) 130423

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF SUSANNE MARSH, Petitioner-Appellant, and THOMAS MARSH, Respondent-Appellee. |
| District & No. | Second District<br>Docket No. 2-13-0423 |
| Filed | December 26, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The money respondent received from the sale of stock that was gifted to him by petitioner's father during the parties' marriage was not "income" for purposes of respondent's child support obligation, since the stock was sold at a "loss" and no gain or profit resulted, and, further, the trial court properly denied the rule to show cause petitioner filed against respondent alleging that he failed to comply with his child support obligation with regard to the "additional income" he allegedly received from the sale of the stock. |
| Decision Under Review | Appeal from the Circuit Court of McHenry County, No. 11-DV-1069; the Hon. Mark R. Gerhardt, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Tamara A. Marshall, of Zanck, Coen, Wright & Saladin, P.C., of Crystal Lake, for appellant.<br><br>Jay K. Filler, Jr., of Filler & Associates, of Marengo, for appellee. |

Panel	JUSTICE HUDSON delivered the judgment of the court, with opinion.
Justices Birkett and Spence concurred in the judgment and opinion.

## OPINION

¶ 1    Petitioner, Susanne Marsh, filed a petition for a rule to show cause and for attorney fees against respondent, Thomas Marsh, claiming that respondent failed to comply with his child support obligations. The trial court denied the petition, and petitioner timely appealed. The sole issue on appeal is whether money received by respondent from the postdissolution sale of certain shares of stock that he owned prior to the dissolution constitutes "income" for purposes of child support under section 505(a)(3) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/505(a)(3) (West 2012)). We find that it does not, and thus we affirm.

¶ 2                              I. BACKGROUND
¶ 3    On July 23, 2012, the 24-year marriage of petitioner and respondent was dissolved. At the time of dissolution, the parties had three children, one of whom was a minor. The judgment of dissolution incorporated the parties' marital settlement agreement (MSA). The MSA provided, *inter alia*, that respondent would retain ownership of "[h]is shares owned in Wisted's Supermarket." (There was an identical provision for petitioner to retain ownership of "[h]er shares owned in Wisted's Supermarket.") In addition, the MSA included the following provisions concerning child support:

> "A. [Respondent] shall pay to [petitioner], as and for the support of the minor child ***, the sum of $731 per month commencing April[ ] 2012. [Respondent's] child support payments will be offset against [petitioner's] maintenance payments ***. As a result of this offset, the amount to actually be withheld from [respondent's] paycheck shall be $231 per month.
>
> B. In addition to the specific dollar amount in paragraph one of this order, and also retroactive to include April of 2012, [respondent] shall pay 20% of all additional income, every three months, and shall provide [petitioner] income records sufficient to determine and enforce the percentage amount of such additional support."

¶ 4    On February 7, 2013, petitioner filed a petition for a rule to show cause and for attorney fees. According to the petition, on December 28, 2012, respondent received $275,000 in income from the sale of his shares of Wisted's stock and failed to pay petitioner 20% of that income as required. Petitioner attached an affidavit, in which she averred the following:

"2. During the course of our marriage, my father gave [respondent] and me shares of stock in Wisted's Supermarket Inc.

3. The transfer of these shares to me and [respondent] was a gift and Wisted's Supermarkets, Inc. paid for all personal income tax obligations that [respondent] and I incurred as a result of our ownership of the stock. In addition, depending on the profitability of the company, [respondent] and I have received stock distributions in addition to the funds to cover taxes."

¶ 5   On March 27, 2013, respondent filed his response to the petition. According to respondent, because he sold the stock at a "loss," he did not receive any income that would be subject to the child support provisions in the MSA.[1] Respondent attached to his response a copy of the stock sale agreement and an affidavit from Barbara Glanz, a certified public accountant who had worked for Wisted's Supermarket, Inc., and the parties for many years. According to Glanz's affidavit, the cost basis of respondent's 131 shares of Wisted's stock through December 31, 2011, was $282,079. She further averred the following:

"5. That said cost basis was computed utilizing the cost basis of the stock at the time it was gifted to [respondent] and then adjusting the basis yearly by the amount of net income or loss distributions of Wisted's Supermarket, Inc. ([p]roportionate to the number of shares owned by [respondent] in relation to the total number outstanding) since the date of the gift and through December 31, 2011.

6. That the 2012 tax return for Wisted's Supermarket, Inc. has not yet been completed, but based on my review of preliminary reports, there will be additional income for the year 2012. If that, in fact, is the case, then the basis for the stock will be greater than $282,079.00.

7. That the reason that the income/loss impacts the basis of the stock is that, the shareholders['] proportionate share of those earnings/losses [is] passed through to them by a K-1, as this [is] a sub-chapter S corporation. The shareholder than [*sic*] pays the income taxes on these earnings even though the earnings have not been distributed. The increasing of the basis of the stock is a proper accounting procedure to prevent double taxation of the same earnings.

8. That subject to the adjustment for the year 2012, when preparing [respondent's] tax return, I will utilize the sum of $282,079.00 for the cost basis of the stock, and since the sales price was $275,000.00, the return will reflect a loss of the stock."

¶ 6   At the hearing on the petition, neither party presented evidence. After hearing counsel's arguments, the trial court agreed with respondent that there was no increase in "wealth" and denied the petition.

---

[1]He also filed a counterpetition for a reduction of child support on the basis that he suffered a loss when he sold the stock. When the court denied petitioner's petition, respondent withdrew his counterpetition. It is not at issue on appeal.

¶ 7    Petitioner timely appealed.

¶ 8                                II. ANALYSIS

¶ 9    We first address our standard of review. Generally, the trial court's net income determination and child support award lie within its discretion. *In re Marriage of Deem*, 328 Ill. App. 3d 453, 457 (2002). However, here, petitioner challenges the court's interpretation of what constitutes "income" pursuant to section 505(a)(3) of the Act.[2] The interpretation of the term "income" under section 505(a)(3) of the Act is a question of law, which we review *de novo*. *In re Marriage of McGrath*, 2012 IL 112792, ¶ 10; *In re Marriage of Rogers*, 213 Ill. 2d 129, 135-36 (2004). Although respondent claimed in his brief that an abuse-of-discretion standard applied, he conceded at oral argument that the appropriate standard is *de novo*.

¶ 10    We turn now to the merits. The question is whether the proceeds from respondent's sale of stock are income for purposes of child support. Section 505(a)(3) of the Act defines "net income" as "the total of all income from all sources" minus several enumerated deductions. 750 ILCS 5/505(a)(3) (West 2012). The Act does not define "income" for purposes of child support. In such cases, courts give undefined words their plain and ordinary meaning. See *Rogers*, 213 Ill. 2d at 136.

¶ 11    In *Rogers*, the supreme court discussed the plain and ordinary meaning of the term "income":

> "As the word itself suggests, 'income' is simply 'something that comes in as an increment or addition ***: a gain or recurrent benefit that is usu[ally] [*sic*] measured in money ***: the value of goods and services received by an individual in a given period of time.' Webster's Third New International Dictionary 1143 (1986). It has likewise been defined as '[t]he money or other form of payment that one receives, usu[ally] [*sic*] periodically, from employment, business, investments, royalties, gifts and the like.' Black's Law Dictionary 778 (8th ed. 2004)." *Rogers*, 213 Ill. 2d at 136-37.

Illinois courts have also defined "income" as " ' "a gain or profit" [citation] and is "ordinarily understood to be a return on the investment of labor or capital, thereby increasing the wealth of the recipient" [citations].' " *In re Marriage of Worrall*, 334 Ill. App. 3d 550, 553-54 (2002) (quoting *Villanueva v. O'Gara*, 282 Ill. App. 3d 147, 150 (1996)).

¶ 12    Petitioner argues that, when respondent sold the stock, he received "new" money that he did not already have and thus realized a gain. Respondent argues that there was no gain, because he "simply converted the stock he was awarded to cash, and that cash was income already owned."

¶ 13    Our supreme court's decision in *McGrath* is instructive. There, the trial court included funds that the unemployed father regularly withdrew from his savings account in its calculation of net income for child support purposes. *McGrath*, 2012 IL 112792, ¶ 10. In so doing, the trial court relied, in part, on *In re Marriage of Lindman*, 356 Ill. App. 3d 462

_____

[2]The parties do not suggest that "income," as used in the MSA, should be defined differently.

- 4 -

(2005), wherein we held that individual retirement account disbursements could be included in net income under section 505 of the Act. *McGrath*, 2012 IL 112792, ¶ 6. The father appealed, and the First District affirmed the trial court's decision. Finding the Act's definition of net income to be "expansive," the First District found that " '[a]n unemployed parent who lives off regularly liquidated assets is not absolved of his child support obligation.' " *Id*. ¶ 8 (quoting *In re Marriage of McGrath*, 2011 IL App (1st) 102119, ¶ 11). The case moved on to the supreme court.

¶ 14    The supreme court, noting that the Act did not define income, relied on the definitions of income set out in *Rogers*. *Id*. ¶ 14. The court found that the money did not fit any of those definitions. *Id*. The court explained:

> "The money in the account already belongs to the account's owner, and simply withdrawing it does not represent a gain or benefit to the owner. The money is not coming in as an increment or addition, and the account owner is not 'receiving' the money because it already belongs to him." *Id*.

The court acknowledged the lower courts' concerns that the child support amount generated by the unemployed father's actual net income was inadequate, particularly where the evidence established that he had considerable assets and was withdrawing over $8,000 from his savings account every month. *Id*. ¶ 16. However, the court pointed out that, if application of the statutory guidelines generates an amount that the trial court considers inappropriate, the Act allows for the trial court to make a finding to that effect and adjust the amount accordingly. *Id*. ¶ 18.

¶ 15    The question, here, is whether respondent's stock was analogous to the savings account in *McGrath*. Petitioner seeks to distinguish *McGrath* by arguing that, "[u]nlike in *McGrath*, where pre-existing funds were being withdrawn from a savings account, the [respondent] in this case *did* receive money that he did not previously have (or pay child support from), as a gain or increment in addition to funds he had before he sold his gifted shares of stock." (Emphasis in original.) However, the fact that, at the time of dissolution, the asset was in the form of stock rather than money is a distinction without a difference, because the stock was a liquid asset, readily converted into cash. Thus, the mere conversion of the stock to money did not result in a gain for respondent. The cash proceeds simply took the place of the shares of stock. See *In re Marriage of Anderson*, 405 Ill. App. 3d 1129, 1135 (2010) (proceeds from reverse stock split not income where the cash proceeds took the place of the former shares of stock). Further, the fact that respondent had been gifted the shares is of no consequence. Whether the shares were gifted or purchased, respondent received the shares prior to the dissolution and was the owner at the time of dissolution.

¶ 16    Petitioner's reliance on *In re Marriage of Colangelo*, 355 Ill. App. 3d 383 (2005), does not warrant a different conclusion. In *Colangelo*, we held that distributions from vested stock options should be included in the calculation of net income under section 505(a)(3) of the Act. *Id*. at 392. There, at the time of dissolution, the trial court allocated unvested stock options to the father as marital property. *Id*. at 385. The stock options subsequently became vested and were distributed. *Id*. at 386. The mother filed a petition for a rule to show cause, arguing that the additional shares were income of which the father owed 20% for child

support but refused to pay. *Id*. The trial court denied the petition, and the mother appealed. *Id*. at 387. On appeal, the father maintained that to count the stock distributions as income would amount to double-counting the value of the asset, because the unvested stock options had previously been distributed to him as marital property. *Id*. at 389. We found that the trial court should have considered the father's stock distributions as income for child support purposes. *Id*. We stated: "Because the unvested stock options transformed into a realized distribution, it would seem that the distribution is not marital property being counted as income, but instead the fruits of the marital property." *Id*.

¶ 17   We fail to see how *Colangelo* supports petitioner's position. There is clearly a difference between owning unvested stock options (incapable of being exercised) and shares of stock that are readily capable of being converted into cash. Certainly, as this court noted, when the stock options vested and resulted in stock distributions, there was a gain. *Id*. at 392. Here, unlike in *Colangelo*, there was no gain. Indeed, the evidence established that respondent sold the shares at a loss.

¶ 18   In sum, based on the above, we find that respondent's postdissolution sale of certain shares of stock that he owned prior to the dissolution, from which sale no gain or profit was realized, did not constitute "income" for purposes of child support under section 505(a)(3) of the Act.

¶ 19                                    III. CONCLUSION
¶ 20   The judgment of the circuit court of McHenry County is affirmed.

¶ 21   Affirmed.